**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ahmad Alsadi, et al., | No. CV-16-03738-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Intel Corporation, et al., | |
| Defendants. | |

Before the Court are Plaintiffs' Motion to Strike Defendants' Non-Party at Fault and Amended Non-Party at Fault Designations (Doc. 100), Defendants' Motion for Judgment on the Pleadings (Doc. 104), and Plaintiff's Motion for Leave to file a Third Amended Complaint (Doc. 117). All motions are fully briefed.[1]

## I. BACKGROUND

Plaintiff Ahmad Alsadi ("Mr. Alsadi") filed this suit on September 26, 2016, in Arizona state court against Defendant Intel Corporation ("Intel") and several fictious individuals and entities. (Doc. 1-2 at 5-8). Intel subsequently removed the suit to this Court pursuant to this Court's diversity jurisdiction. (Doc. 1 at 2). Mr. Alsadi filed a First Amended Complaint ("FAC") on March 27, 2017, and a Second Amended Complaint ("SAC") on May 19, 2017, to include his wife, Youssra Lahlou ("Ms. Lahlou"), as a Plaintiff. (Docs. 17, 20). Mr. Alsadi and Ms. Lahlou's (collectively "Plaintiffs") SAC

---

[1] Although requested, the Court does not find that oral argument on the Motions would assist the Court in its determination of the issues because the parties have had an adequate opportunity to present their written arguments. Therefore, oral argument is unnecessary, and Defendants' request is denied. *See* Fed.R.Civ.P. 78(b); LRCiv. 7.2(f).

alleged that on February 28, 2016, Mr. Alsadi was working for Jones, Lang, Lasalle ("JLL") as an HVAC Mechanical Engineering Technician at Intel's Chandler Campus ("Premises") when he was exposed to a toxic emission and discharge of gaseous fumes. (Doc. 20).  Mr. Alsadi alleges that as a result of this exposure, he has a permanent respiratory injury.  (*Id.*)

## II. DISCUSSION

### A. Plaintiffs' Motion to Strike

Pursuant to A.R.S. § 12-2506(B), Intel filed a non-party fault designation ("NFP") on September 8, 2017, and an amended NFP on October 30, 2017.  (Docs. 43, 48).  Both NFPs named JLL and individual JLL employees as non-parties at fault.  (*Id.*) A.R.S. § 12-2506(B) provides, in relevant part: "Negligence or fault of a nonparty may be considered if the plaintiff entered into a settlement agreement with the nonparty or if the defending party gives notice before trial, in accordance with requirements established by court rule, that a nonparty was wholly or partially at fault."  The "requirements established by court rule" can be found at Arizona Rule of Civil Procedure 26(b)(5), which establishes that a notice of non-parties at fault must be filed within 150 days of answering.  If a defendant fails to timely file, "the trier of fact shall not be permitted to allocate or apportion any percentage of fault to any nonparty . . . except . . . upon motion establishing good cause, reasonable diligence, and lack of unfair prejudice to other parties."

Although Arizona Rule 26(b)(5) does not apply of its own force, courts in this district have held that it should nonetheless be applied for federal courts sitting in diversity when analyzing NFPs.  *See Kingsley Capital Mgmt. v. Sly*, 2012 WL 3578855, at *1 (D. Ariz. Aug. 20, 2012) (citing *Wester v. Crown Controls Corp.*, 974 F. Supp. 1284, 1286–87 (D. Ariz. 1996).  Therefore, this Court must determine whether Intel filed the NFPs within the time set by Arizona Rule 26(b)(5), and if not, Intel's NFPs must be stricken unless Intel can establish "good cause, reasonable diligence, and lack of unfair prejudice to other parties."  Arizona Rule 26(b)(5); *see also Kingsley Capital Mgmt.*, 2012 WL 3578855, at *1.

Here, Plaintiffs argue that regardless of the fact that they filed a FAC and then a SAC, an NFP must have been filed 150 days after Intel filed its answer to the original complaint. (Doc. 100 at 5). In other words, Plaintiff argues that because Intel filed its Answer to the Complaint on November 14, 2016, Intel had to file an NFP on or before April 13, 2017. (Doc. 5). Thus, Intel's first NFP was untimely because it was not filed until September 8, 2017; as a result, the subsequent amended NFP filed on October 30, 2017, was also untimely. Intel on the other hand argues that the 150-day time period renews upon a defendant filing an answer to an amended complaint; thus, its NFPs were timely. In other words, Intel claims that because it filed its Answer to Plaintiffs' SAC on June 2, 2017, the NFP deadline was October 30, 2017, and therefore Intel's first NFP filed on September 8, 2017, and its amended NFP filed on October 30, 2017, were timely.

Authority from this District supports Plaintiffs' interpretation of Arizona Rule 26(b)(5). *See e.g.*, *Daly v. Royal Ins. Co. of Am.*, 2002 WL 1768887, at *17 (D. Ariz. July 17, 2002) ("The text of Rule 26(b)(5) makes no suggestion that the 150 days should be counted from anything but the initial answer."); *Monje v. Spin Master Inc.*, 2014 WL 11514478, at *11 (D. Ariz. Nov. 18, 2014), *aff'd*, 679 Fed. Appx. 535 (9th Cir. 2017) ("In the event there is an amended answer, the 150-day filing period runs from the initial answer."); *Sippe v. Travelex Ins. Services, Inc.*, 2014 WL 794345, at *3 (D. Ariz. Feb. 27, 2014) ("To the extent that [defendant] argues that the 150 day period recommences with every successive answer it files to an amended complaint, the Court has previously rejected that argument, and does so again."). Intel argues that both *Daly* and *Monje* are unpublished; thus, this Court is not bound by the holdings. (Doc. 150 at 3). Intel is correct, unpublished opinions are not binding on this Court; however, unpublished opinions are persuasive. Moreover, Intel does not cite any authority that supports its position that 150-day filing period renews from the filing of an answer to an amended complaint. The Court finds the plain language of Arizona Rule 26(b)(5) supports Plaintiff's interpretation. Thus, the deadline to file an NFP was April 13, 2017; therefore, Intel's NFPs, which were filed on September 8, 2017, and October 30, 2017, were untimely. The Court will grant Plaintiff's

Motion to Strike.

To the extent that Intel argues that Plaintiffs' SAC raised new claims or facts that Intel had previously not been aware of the existence of or need to name a non-party at fault until the amended complaint was filed, then the period in which to file an NFP could be extended by Intel filing a motion establishing good cause. Arizona Rule 26(b)(5); *Sippe*, 2014 WL 794345, at *3. Intel has not filed such a motion and has not raised any arguments in its Response to Plaintiff's Motion to Strike that establish good cause to extend the deadline to file an NFP. Therefore, the Court will not address whether there is good cause to extend the deadline to file an NFP.

**B.    Plaintiffs' Motion for Leave to Amend Complaint**

On September 10, 2018, Plaintiffs filed a Motion for Leave to file a Third Amended Complaint to add a claim of strict liability. (Doc. 117 at 12). Intel opposes the Motion arguing that the deadline for amending the complaint has long passed and Plaintiffs have not shown good cause for not having amended their complaint prior to the deadline. (Doc. 128 at 3). On January 11, 2017, the Court entered a Rule 16 Scheduling Order that set the deadline for amending pleadings as 60 days from the date of the Order. (Doc. 10 at 2). Thus, the deadline for filing an amended complaint was March 13, 2017.

Generally, Rule 15(a) governs a motion to amend pleadings to add claims or parties. Fed.R.Civ.P. 15(a). However, in this case, Rule 16(b) also applies because Plaintiffs requested leave to amend their Complaint after expiration of the Rule 16 Scheduling Order deadline for doing so. Fed.R.Civ.P. 16(b); (Doc. 10 at 2). In other words, after a Rule 16 Scheduling Order has been issued, a motion seeking to amend the pleadings is governed secondarily by Rule 15(a), only after Rule 16(b) has been satisfied. *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999); *see Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994). Accordingly, the Court will first evaluate Plaintiffs' Motion under Rule 16, and then, if necessary, under Rule 15(a). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice

to the opposing party, Rule 16(b)[(4)]'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Here, Plaintiffs provide that they are requesting leave to add a claim for strict liability. (Doc. 117 at 11). Plaintiffs are asking for leave to file a Third Amended Complaint approximately eighteen months after the deadline for amending pleadings has expired and their request came just four days before the close of discovery on September 14, 2018. (Docs. 10, 98, 117, 142).[2] Thus, the Court is skeptical of whether Plaintiffs can meet Rule 16(b)(4)'s good cause threshold; however, the Court will not address the merits of the Motion because Plaintiffs failed to comply with Local Rule 15.1(a), which among other things requires the party seeking leave to amend must "attach a copy of the proposed amended pleading as an exhibit to the motion, **which must indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added**." (emphasis added). Here, Plaintiffs' proposed Third Amended Complaint (Doc. 117-2) does not indicate in what respect it differs from the SAC (Doc. 20). Plaintiffs have not bracketed or struck through the text to be deleted and have not underlined the text to be added. Plaintiffs' proposed Third Amended Complaint (Doc. 117-2) therefore fails to comply with Local Rule 15.1(a). Plaintiffs' failure to comply with Local Rule 15.1(a) hinders the Court's ability to compare the SAC and the Third Amended Complaint. Therefore, Plaintiffs' Motion for leave to file a Third Amended Complaint (Doc. 117) will be denied.

### C. Intel's Motion for Judgment on the Pleadings

The Court has denied Plaintiffs' Motion for Leave to Amend; thus, the Court will now address Intel's Motion for Judgment on the Pleadings. (Doc. 104). Plaintiffs' SAC claimed, "Intel owed a duty of due care to the people legally on the Premises[3] and,

---

[2] Additionally, during the course of this litigation the parties have requested no less than nine extensions to some or all of the case management deadlines. (Doc. 98).

[3] The "Premises" is defined as Intel's manufacturing location in Chandler, Arizona where Mr. Alsadi was injured. (Doc. 20 ¶8).

specifically owed a duty to [Mr. Alsadi], to conduct reasonable inspection of the Premises and create safeguards from potential hazards in order to protect [Mr. Alsadi] from hazards that exist or could exist on the Premises." (Doc. 20 ¶ 22). Intel argues that the duty Plaintiffs allege Intel owed to Mr. Alsadi is not a cognizable duty under Arizona law. (Doc. 104).

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. Proc. 12(c). "Rules 12(b)(6) and 12(c) are substantially identical." *Strigliabotti v. Franklin Resources, Inc.*, 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005). Rule 12(c) motions for judgment on the pleadings are therefore reviewed under the standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980). In ruling on a Rule 12(c) motion, the Court must "determine whether the facts alleged in the complaint, to be taken for [the purposes of a Rule 12(c) motion] as true, entitle the plaintiff to a legal remedy." *Strigliabotti*, 398 F. Supp. 2d at 1097. "If the complaint fails to articulate a legally sufficient claim, the complaint should be dismissed or judgment granted on the pleadings." *Id*. A Rule 12(c) motion is thus properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 939 (9th Cir. 2009).

The Court is sitting in diversity; therefore, the Court must apply Arizona substitutive law. *Rause v. Paperchine, Inc.*, 743 F. Supp. 2d 1114, 1117 (D. Ariz. 2010). Under Arizona law, a plaintiff asserting negligence must prove: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). Duty is an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Id.* In Arizona, duty is based on either recognized common law special relationships or relationships created by public policy. *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 829 (Ariz.

2018).  Duties based on special relationships may arise from several sources, including special relationships recognized by the common law, contracts, or "conduct undertaken by the defendant." *Gipson*, 150 P.3d at 231-32.  Public policy creating a duty is based on state and federal statutes and the common law.  *See id.* at 233.

Here, the issue is whether there was a special relationship between Intel and Mr. Alsadi, which gave rise to a legal duty.  Plaintiffs have plead in the SAC that Mr. Alsadi was working in the CN-3 Building on the Premises and there was a "toxic emission and discharge of gaseous fumes from the CH-8 building at the Premises." (Doc. 20 ¶¶ 10, 12).  Moreover, Plaintiffs have plead that the "toxic emission and discharge of gaseous fumes" was a result of Intel's conduct, not the conduct of Mr. Alsadi or his employer, JLL.  (*Id.* ¶¶ 23-25).  Additionally, after the "toxic emission and discharge of gaseous fumes" were noticed, Intel dispatched an Emergency Reponses Team ("ERT") to investigate and the ERT examined Mr. Alsadi and determined that he need to receive medical attention.  (*Id.* ¶¶ 15-18).  Moreover, Plaintiffs plead that "[a]t all relevant times alleged herein Intel managed, maintained, and/or otherwise controlled the Premises."  (*Id.* ¶ 10).

Plaintiffs argue that "[h]aving pleaded that Intel operated, managed, and generally controlled the location where the Incident occurred (and that it is the owner of the Premises), and that [Mr.] Alsadi was legally working there at the time as an HVAC technician, Plaintiffs have met their burden to allege a legal duty." (Doc. 117 at 8 (internal citation omitted)).  Intel contends that "[u]nder Arizona law, a business owner does not owe a legal duty to the employee of a contractor or subcontractor with respect to injuries that employee claims to have suffered while working unless the employee is injured as a result of the negligence of the business owner in work over which the business owner retained control." (Doc. 129).

Intel is correct in that generally in Arizona a landowner does not owe a duty to provide a safe work place to an employee of a contractor or subcontract.  *Rause*, 743 F. Supp. 2d at 1122 (finding that Arizona courts have consistently held that the duties in

Restatement § 422[4] are not owed to employees of independent contractors). However, if the landowner had an active role in bringing about the dangerous condition which caused the injury then the landowner may be held liable. *See Allison Steel Mfg. Co. v. Superior Court In & For Pima County*, 523 P.2d 803, 808 (Ariz. Ct. App. 1974) (holding that if the landowner or contractor[5] had no active role in bringing about the dangerous condition they cannot be held liable under a theory of non-delegable duty; however, if the landowner was actively involved than the landowner might be held liable for breach of its duty to keep joint working spaces reasonably safe for workmen); *see also Lewis v. N.J. Riebe Enterprises, Inc*., 825 P.2d 5, 9 (Ariz. 1992) (holding that pursuant to Restatement § 414, [6] "a general contractor has a duty to provide a safe workplace for the employees of subcontractors."). Thus, in short, depending on the amount of control Intel retained over the Premises, Intel's duty to provide a safe workplace could extend to Mr. Alsadi as the employee of Intel's contractor.[7] *Id.* ("Although an owner or general contractor have a general duty to provide a safe workplace for the employees of subcontractors, the scope of

[4] Restatement (Second) of Torts § 422 (1965) provides: "A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure (a) while the possessor has retained possession of the land during the progress of the work, or (b) after he has resumed possession of the land upon its completion."

[5] Arizona courts have held that "[t]he duties of a landowner to a contractor are similar to the duties of a general contractor to a subcontractor." *Rause*, 743 F. Supp. 2d at 1126 ("Arizona courts have held that landowners, as the employers of contractors, have analogous duties to general contractors with respect to Restatement § 414.").

[6] Restatement (Second) of Torts § 414 (1965) provides: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

[7] In *Lewis*, the Court reached its holding that a "general contractor has a general duty to provide employees of subcontractors with a reasonably safe place to work" not by applying Restatement § 422's premises liability, but instead applying Restatement § 414's retained control. 170 Ariz. at 387. In other words, a landowner cannot be held vicariously liable for an injury to an employee of an independent contractor due to the independent contractor's negligence; however, a landowner can be held directly liable for an injury to an employee of an independent contractor due the landowner's negligence. *See Rause*, 743 F. Supp. 2d at 1126. Here, Plaintiffs' claims are premised on the allegations that Intel had an active role in bringing about the dangerous condition that injured Mr. Alsadi; thus, Intel may be liable to Mr. Alsadi for those injuries.

that duty extends only as far as the amount of control retained by the owner or general contractor over the work of the subcontractor."). However, '[t]he issue of retained control is a question of fact that should ordinarily be left to the fact finder." *Id.* (citing *Lewis*, 170 Ariz. at 389, 825 P.2d at 10). At this juncture, the Court needs only to "determine whether the facts alleged in the complaint, to be taken for [the purposes of a Rule 12(c) motion] as true, entitle the plaintiff to a legal remedy." *Strigliabotti*, 398 F. Supp. 2d at 1097. Thus, the Court finds that Plaintiffs' have plead facts, that if true, establish that they are entitled to a legal remedy. Therefore, the Court will deny Intel's Motion for Judgment on the Pleadings.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Strike Defendants' Non-Party at Fault and Amended Non-Party at Fault Designations (Doc. 100) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Third Amended Complaint (Doc. 117) is **DENIED**; and

**IT IS FINALLY ORDERED** that Intel's Motion for Judgment on the Pleadings (Doc. 104) is **DENIED**.

Dated this 25th day of February, 2019.

_____
Honorable Diane J. Humetewa
United States District Judge

- 9 -