**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ahmad Alsadi and Youssra Lahlou, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>Intel Corporation, a Delaware corporation,<br><br>Defendant. | No. CV-16-03738-PHX-DGC<br><br>**ORDER** |

On February 28, 2016, Plaintiff Ahmad Alsadi was exposed to hydrogen sulfide ("$H_2S$") while working at Defendant Intel Corporation's technology development campus in Chandler, Arizona. Alsadi asserts negligence claims against Intel, alleging that his exposure to $H_2S$ caused him toxic inhalation injuries. Doc. 20 ¶ 21. He claims to have reactive airways dysfunction syndrome ("RADS") which has rendered him permanently disabled. *See* Docs. 161 at 5, 195 at 3.

In an order dated September 30, 2019, the Court granted Intel's motions to exclude Plaintiffs' experts from offering causation opinions in Plaintiffs' case-in-chief at trial or in response to Intel's summary judgment motion. Doc. 204 at 2-19, 22-25. The Court denied summary judgment on the issue of causation because a jury reasonably could find, without the benefit of expert medical testimony, that Alsadi was exposed to $H_2S$ and the exposure caused a toxic inhalation injury on the night in question and immediately thereafter. *Id.* at 30-33.

At the Court's direction, the parties have filed supplemental briefs addressing two issues: (1) whether an expert opinion is required to prove that Alsadi's exposure to $H_2S$ caused RADS, and (2) the extent of damages Plaintiffs can seek at trial if they cannot recover for RADs without an expert opinion. *Id.* at 33-34; Docs. 205, 206. For reasons stated below, the Court will grant summary judgment on the issue of whether Alsadi's exposure to $H_2S$ caused RADS and deny summary judgment on the extent and duration of Plaintiffs' injuries. The Court will also grant Plaintiffs' request for clarification of its previous order. Doc. 209.

**I.  Summary Judgment Ruling in Light of Supplemental Briefing.**

   **A.  Summary Judgment on RADS.**

Whether expert medical testimony is required to establish causation under Arizona law "depends upon the nature of the illness with which the jury is concerned." *Crystal Coca-Cola Bottling Co. v. Cathey*, 317 P.2d 1094, 1100 (Ariz. 1957). Arizona courts "have long recognized that unless the result of an accident is clearly apparent to a lay person, expert medical evidence is required to establish the fact of an injury and its causal connection to [the accident]." *Jones v. Indus. Comm'n of Ariz.*, No. 2 CA-IC 2010-0009, 2011 WL 288028, at *3 (Ariz. Ct. App. Jan. 27, 2011) (citations omitted).

RADS is a chronic disease that begins with the sudden onset of asthma symptoms following a high level exposure to a toxic gas, vapor, or fume. *See* Doc. 161 at 12 (citing the definition of RADS provided by the National Center for Biotechnology Information); *Howell v. CSX Transp., Inc.*, No. 2:11-CV-079 JD, 2013 WL 6145730, at *2 (N.D. Ind. Nov. 21, 2013) (RADS is an "irritant-induced asthma typically caused by exposure to high concentrations of chemical fumes"); *Karamolengos v. Durango Ga. Paper Co.*, No. CV202-085, 2007 WL 9701006, at *2 (S.D. Ga. Sept. 27, 2007) ("RADS is a permanent condition that occurs when an individual has a sudden onset of non-allergic asthma caused by a high level exposure to an irritant gas."); *Mattis v. Carlon Elec. Prods.*, 114 F. Supp. 2d 888, 890 (D.S.D. 2000) (describing the criteria for RADS as set forth in the article first naming the disease) (citing Stuart M. Brooks, Mark A. Weiss & I.L. Bernstein, *Reactive*

*Airways Dysfunction Syndrome: Persistent Asthma Syndrome after High Level Irritant Exposures*, 88 Chest 376 (Sept. 1985)).

The Court agrees with the Seventh Circuit's observation that "a typical layperson does not possess the requisite knowledge to draw a causative line, without the assistance of a medical expert, between a brief encounter with [a toxic] gas and the onset of . . . RADS[,] a disease with which . . . most lay people have no familiarity[.]" *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 702 (7th Cir. 2015). Courts in other jurisdictions have reached the same conclusion. *See Kolesar v. United Agri Prods., Inc.*, 412 F. Supp. 2d 686, 696 (W.D. Mich. 2006) (requiring the plaintiff to present expert testimony that his exposure to metam sodium fertilizer caused RADS "because the effects of toxic chemical exposure are complex and not within the ken of ordinary experience"); *Byous v. L.M. Scofield Co.*, No. 3:07-CV-053-JTC, 2009 WL 10664903, at *10 (N.D. Ga. Jan. 27, 2009) ("Plaintiffs . . . cannot prove that the Cureseal-S vapors caused [the plaintiff's] RADS without expert testimony."); *Zamora v. Champion Cooler Corp.*, No. 05-16-00577-CV, 2018 WL 507362, at *1-2 (Tex. App. Jan. 23, 2018) (requiring expert testimony to prove that exposure to fumes from an acetylene torch and machine grease caused RADS).

Plaintiffs' reliance on *Sunnycalb v. CSX Transportation, Inc.*, 926 F. Supp. 2d 988 (S.D. Ohio 2013), is misplaced. Doc. 206 at 3-4. The plaintiff in that case presented testimony of medical experts "who conducted numerous diagnostic tests and ruled out other possible causes before diagnosing [the] plaintiff with RADS." *Sunnycalb*, 926 F. Supp. 2d at 996. One expert had "exhaustively reviewed the medical literature regarding RADS and the effects of exposure to chlorine[,]" and expressly opined that the plaintiff's "sudden chemical exposure to chlorine . . . could generally cause, and in [his] case, did specifically cause, [the] plaintiff's injuries." *Id.* Plaintiffs present no admissible expert opinion that the exposure in this case caused RADs. Moreover, *Sunnycalb* involved claims under the Federal Employers' Liability Act for which a "a relaxed standard of causation applies" in "comparison to tort litigation at common law[.]" *CSX Transp., Inc. v. McBride*,

564 U.S. 685, 692 (2011) (citation omitted); *see Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994) (noting the "modicum of causation [the] FELA requires").

Plaintiffs' citation to *Gass v. Marriott Hotel Services, Inc.*, 558 F.3d 419 (6th Cir. 2009), fares no better. Doc. 206 at 3. The *Gass* plaintiffs became ill within minutes of entering a hotel room filled with a putrid cloud of toxic pesticides, and were diagnosed with acute pesticide exposure shortly thereafter. 558 F.3d at 422-24. The Sixth Circuit concluded that it did not take an expert to find that the defendants likely caused the plaintiffs' injuries given their immediate adverse reaction to the pesticides in the hotel room. *Id.* at 433. The Court has reached a similar conclusion in this case: "a jury reasonably could find, without the benefit of expert medical testimony, that Alsadi was exposed to $H_2S$ and the exposure caused a toxic inhalation injury." Doc. 204 at 31-32 (citing *Cathey*, 317 P.2d at 1100).[1]

But the claim that the $H_2S$ exposure caused RADS – a permanent disease with which most lay people have no familiarity – distinguishes this case from *Gass*. The Seventh Circuit aptly explained the distinction in *Higgins*:

> [T]he *Gass* plaintiffs complained only of "chemical poisoning" (i.e., headache, itching, dizziness, etc.). The connection between the inhalation of harmful pesticides – exposure to which occurred in a confined hotel room – and those symptoms is fairly obvious, as the Sixth Circuit found. Here, by contrast, Higgins primarily complains that exposure to chlorine fumes caused not symptoms, but [a] permanent, chronic condition[] – [RADS].

794 F.3d at 703.

Absent an expert opinion that Alsadi's exposure to $H_2S$ caused RADS, any jury award of damages for RADS would be based on speculation. *See id.* (explaining that

---

[1] *See also Bradford v. CITGO Petro. Corp.*, 237 So. 3d 648, 660-74 (La. Ct. App. 2018) (finding that the plaintiffs proved causation where they experienced inhalation injuries immediately after being exposed to $H_2S$); *Ulfik v. Metro-N. Commuter R.R.*, 77 F.3d 54, 59-60 (2d Cir. 1996) ("[T]he trier of fact could reasonably determine, without expert testimony, that prolonged exposure to paint fumes would cause headache, nausea, and dizziness.")

4

without the requirement for expert testimony, a plaintiff claiming that exposure to a chemical caused RADS "would be free . . . to prove his allegations relying on the logical fallacy '*post hoc ergo propter hoc*'"); *Claar*, 29 F.3d at 502-04 (finding that "special expertise" was necessary to draw a causal inference between the chemical exposure and the plaintiffs' alleged "'dyscalculia' (poor arithmetic ability) and 'spelling dispraxia' (poor spelling ability)"); *Ulfik*, 77 F.3d at 59 (distinguishing *Claar* because "special expertise was thought necessary because of the esoteric nature of the injuries alleged – dyscalculia and spelling dyspraxia"); *see also Coca-Cola Bottling Co. of Tucson v. Fitzgerald*, 413 P.2d 869, 872-73 (Ariz. 1966) (medical testimony was required to prove that drinking fungus-contaminated soda caused the plaintiff's heart condition suffered two weeks after the incident but not his initial symptoms of nausea).

The Court will grant summary judgment on the issue of whether Alsadi's exposure to $H_2S$ caused RADS. *See Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1047 (Ariz. 1990) (the court must not leave causation to the jury's speculation); *Kolesar*, 412 F. Supp. 2d at 696-99 (granting summary judgment where the plaintiff failed to present an expert opinion that his chemical exposure caused RADS); *Byous*, 2009 WL 10664903, at *10-11 (same); *Zamora*, 2018 WL 507362, at *5 (same); *Shiver v. Ga. & Fla. Railnet, Inc.*, 652 S.E.2d 819, 821 (Ga. Ct. App. 2007) (affirming summary judgment where the plaintiff presented "no admissible medical testimony to support his claim that exposure to diesel fumes caused him to develop RADS").

**B.      Extent and Duration of Plaintiffs' Recoverable Injuries.**

The parties were asked to address the extent of injuries Plaintiff can recover at trial without a medical causation expert. Doc. 204 at 34. Intel contends that the jury should not be allowed to award damages beyond those necessary to compensate Plaintiffs for the acute symptoms Alsadi experienced on the night of the incident and up to a week thereafter. Doc. 205 at 8. Plaintiffs counter that they should be entitled to recover their full damages, including damages for permanent injuries they can establish at trial. Doc. 206 at 8.

This is an unusual case. Plaintiffs have failed to disclose timely or admissible expert testimony that Alsadi's exposure caused the little-known illness of RADs, and therefore they are precluded from seeking to recover for RADs, But the facts of his exposure — as discussed in the Court's previous order — seem clearly to suggest that Alsadi suffered an inhalation injury on the night in question that has persisted for some time thereafter. Docs. 204 at 31-32, 206 at 4-5. Thus, although Plaintiff now lacks evidence to show that he suffers from RADs, he is not precluded under Arizona law from presenting evidence that he suffered an inhalation injury on the night in question, that has persisted. *See Heck v. City of Lake Havasu*, No. CV 04–1810–PCT–NVW, 2006 WL 2460917, at *11-12 (D. Ariz. Aug. 24, 2006) (denying summary judgment where the jury could infer from circumstantial evidence that carbon monoxide contributed to a drowning death); *Patania v. Silverstone*, 415 P.2d 139, 144 (Ariz. 1966) ("Whether the injury is permanent need not be proven by medical testimony, nor is the jury bound by the testimony of a medical expert who testifies as to the lack of permanency of the injury, if there is controverting evidence or testimony from which it may be inferred that the injury is in fact permanent.") (citation omitted); *Ball v. Prentice*, 781 P.2d 628, 630 (Ariz. Ct. App. 1989) ("Whether Ball's emotional problems, nausea, sleeplessness, tension and headaches are causally connected to the accident and the extent and duration of those injuries is a matter for jury determination."); *Bradford*, 237 So. 3d at 674-75 (affirming award of damages based in part on each plaintiff's testimony as to how long he or she continued to have symptoms from the chemical exposure and noting that "the last medical visit is not a magic bullet that suddenly remedies a plaintiff's symptoms and makes him whole again").

And if Plaintiffs are permitted under Arizona law to show that Alsadi suffered immediate inhalation injury symptoms that have persisted, the Court can see no legal basis for holding that they cannot seek future damages for the same symptoms, provided they can present evidence that the symptoms are likely to continue into the future. "Where there is conflicting evidence as to the extent of the plaintiff's injuries, it is a question for the jury. It is not the function of the trial court . . . to determine the amount which would compensate

the plaintiff." *Hardy v. S. Pac. Emp. Ass'n*, 459 P.2d 743, 748 (Ariz. Ct. App. 1969); *see Lloyd v. State Farm Mut. Auto. Ins.*, 860 P.2d 1300, 1304 (Ariz. Ct. App. 1992) (noting that "[t]he extent of damages is a jury question"); *Merch. Transaction Sys., Inc. v. Nelcela, Inc.*, No. CV02-1954-PHX-MHM, 2010 WL 1336956, at *2 (D. Ariz. Mar. 31, 2010) (citing *Lloyd* for the proposition that "damages must be awarded by a jury based on evidence presented at trial").

The Court does not know from the present record whether precluding evidence of RADs, while permitting evidence of continuing inhalation injury symptoms, is a distinction without a difference. The Court cannot tell from the record whether RADs includes complications or a prognosis not suggested by a mere continuation of Alsadi's symptoms. If it does, Plaintiff will not be permitted to recover for such additional complications or prognosis. If it does not, then the Court's ruling may simply mean that the case is tried with no mention of RADs. The Court's intention will be to permit Plaintiffs to present evidence, if offered in admissible form, that Alsadi's symptoms which developed immediately upon exposure (and which the jury therefore could properly conclude were caused by the exposure) have continued and likely will continue into the future, but not to permit them to present evidence of new or different symptoms that were not immediately apparent upon exposure. The Court will engage in this line-drawing as the evidence is presented at trial.

## II. Plaintiff's Request for Clarification.

Plaintiffs seek clarification or reconsideration of the Court's order granting Intel's motion to exclude opinions of Dr. Kelly Johnson-Arbor. Doc. 209. The Court will grant the motion to the extent Plaintiffs seek clarification.

"To survive summary judgment on a toxic tort claim for physical injuries, [the plaintiff must] show that he was exposed to chemicals that could have caused the physical injuries he complains about (general causation), and that his exposure did in fact result in those injuries (specific causation)." *Golden v. CH2M Hill Hanford Grp.*, Inc., 528 F.3d 681, 683 (9th Cir. 2008) (citing *In re Hanford Nuclear Reservation Litig.*, 292 F.3d

7

1124, 1133 (9th Cir. 2002)); *see In re Zicam Cold Remedy Mktg., Sales Practices, & Prods. Liab. Litig.*, 797 F. Supp. 2d 940, 942 (D. Ariz. 2011) (noting that each state requires toxic tort plaintiffs to "prove general and specific causation for their claims for negligence"); *Mason v. Wasatch Prop. Mgmt., Inc.*, No. C20035581, 2012 WL 12964636, at *2 (Ariz. Super. Ct. Oct. 09, 2012) (explaining that "toxic tort cases require proof of both 'general' and 'specific' causation"). In its order addressing Intel's *Daubert* motions, the Court excluded Dr. Johnson-Arbor's specific causation opinion that Alsadi's exposure to $H_2S$ resulted in RADS. Doc. 204 at 18-19. Plaintiffs seek clarification as to whether Dr. Johnson-Arbor's general causation opinion that $H_2S$ exposure can cause RADS has also been excluded. Doc. 209 at 2.

The answer is yes. The Court will enter summary judgment on Plaintiffs' claim that Alsadi's exposure caused RADS, and with no such claim in the case, Dr. Johnson-Arbor's general causation opinion is not relevant. *See* Fed. Rs. Evid. 401-02. To be clear, however, the Court has made no ruling on the admissibility of any opinion of Dr. Johnson-Arbor that $H_2S$ can cause some of the symptoms Alsadi has experienced since the exposure event. *See* Doc. 209 at 2, 4. Intel has not challenged any such opinion. *See* Doc. 147 at 5-6 (challenging only the general causation opinion that $H_2S$ can cause RADS).

**IT IS ORDERED:**

1. Intel's motion for summary judgment (Doc. 183) is **granted in part and denied in part** as set forth above.

2. Plaintiff's motion for clarification or reconsideration (Doc. 209) is **granted in part and denied in part** as set forth above.

///
///
///
///
///
///

3. The Court will hold a telephone conference on **December 4, 2019 at 4:00 p.m**. for the purpose of setting the pretrial conference and trial in this matter. Counsel for Plaintiffs shall initiate a conference call to include counsel for all parties and the Court. If a dial-in number is to be used, counsel for Plaintiffs shall provide the dial-in information to counsel for all parties and the Court no later than **December 3, 2019 at 3:00 p.m.**

Dated this 15th day of November, 2019.

*David G. Campbell*
David G. Campbell
Senior United States District Judge