**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ahmad Alsadi and Youssra Lahlou, husband and wife, | No. CV-16-03738-PHX-DGC |
| Plaintiffs, | **ORDER** |
| vs. | |
| Intel Corporation, a Delaware corporation, | |
| Defendant. | |

The trial in this tort action was set for May 2020, but was postponed because of the COVID-19 pandemic. The Court plans to reset the trial at the earliest opportunity. The parties have filed 14 motions in limine ("MILs") and Plaintiffs have filed a motion for negative inference. Docs. 207-08, 231-43. The Court heard oral argument on July 17, 2020. This order resolves each motion.

**I.     Background.**

Intel owns an industrial wastewater system ("IWS") housed in the CH-8 building of its technology development campus in Chandler, Arizona. Technicians at Jones Lange LaSalle ("JLL") operate the IWS. Plaintiff Ahmad Alsadi worked for JLL as a HVAC technician at Intel's Chandler campus.

On February 28, 2016, an overdose of the chemical Thio-Red caused the IWS to emit hydrogen sulfide ("$H_2S$") and possibly other toxic gases. CH-8 and the nearby CN-3

building, where Alsadi was working at the time, were evacuated.  Alsadi and other JLL employees were assembled near CH-8.  Alsadi began experiencing a tingly throat, cough, headache, and watery eyes.  He was evaluated by a nurse and then taken to an urgent care facility for treatment.

Plaintiffs filed suit against Intel in September 2016.  Doc. 1-2 at 5-8.  The second amended complaint asserts negligence and loss of consortium claims.  Doc. 20.  Plaintiffs allege that as a result of Alsadi's exposure to toxic gases, he has experienced coughing, pulmonary and respiratory distress, and other injuries requiring medical care.  *Id.* ¶ 21. Alsadi seeks damages for his alleged injuries and future medical care.  *Id.* ¶ 26.  He claims that he is permanently disabled.  *See* Docs. 161 at 5, 195 at 3.

The Court denied Intel's motion for summary judgment on Alsadi's negligence claim.  Doc. 204 at 26-30.  The Court granted Intel's motions to preclude Plaintiffs' experts from offering causation opinions in Plaintiffs' case-in-chief (*see id.* at 2-19, 22-25), but denied summary judgment on the issue of causation because a jury reasonably could find, without the benefit of expert medical testimony, that Alsadi was exposed to $H_2S$ and the exposure caused an immediate toxic inhalation injury (*see id.* at 30-33).   Following supplemental briefing, the Court granted summary judgment in Intel's favor on whether Alsadi's exposure to $H_2S$ caused reactive airways dysfunction syndrome ("RADS"), but denied summary judgment on the extent and duration of his symptoms.  Doc. 216 at 2-7.

## II.     Plaintiffs' Motion for Negative Inference (Doc. 207).

John MacDonald, Intel's emergency response team ("ERT") leader, responded to the chemical release at CH-8.  Doc. 197-1 ¶ 39.  MacDonald and Michael Torbert, a JLL employee, obtained an $H_2S$ reading of 11.7 parts per million ("ppm') inside CH-8 using a digital Altair 5X Gas Detector ("Altair detector").  *Id.* ¶ 43.  The 11.7 ppm measurement is reflected as the "highest level detected" in an ERT report MacDonald prepared after the incident.  Doc. 196-10 at 5.  The ERT report is the only record of $H_2S$ measurements taken during the incident.  Doc. 207 at 2, 7.  Intel contends that an $H_2S$ level of 11.7 ppm could

not have caused the permanent symptoms claimed by Alsadi, and that there is no evidence that Alsadi was exposed to even that level.  Doc. 210 at 4.

Plaintiffs contend that to accurately assess the highest level of Alsadi's actual exposure, "adequate data would be required – measurements of ambient gas levels over numerous points in time from the locations where [Alsadi] was working throughout the day." Doc. 207 at 3.  Plaintiffs assert that no such data exist because Intel failed to preserve data recorded by the Altair detector and did not collect other data of $H_2S$ levels.  *Id.* Plaintiffs request that a negative inference be applied in light of Intel's alleged failure to collect and preserve data showing actual levels of hazardous emissions, and that an appropriate jury instruction be given at trial.  *Id.* at 2-3; Doc. 207-1 at 1.  Since the briefing of this motion, the parties have agreed to a bench trial.  Doc. 276 at 2.  The issue presented by the motion, therefore, is whether the Court should apply a negative inference when deciding this case.[1]

Intel argues that it had no duty to preserve evidence before it received notice that litigation was probable, that it had no duty to create evidence of hazardous emission levels, and that Plaintiffs ignore Federal Rule of Civil Procedure 37(e), which governs negative inference sanctions for the loss of electronically stored information ("ESI").  Doc. 210 at 2-3.

### A.    Sanctions for Spoliation of Evidence.

"It is well established that [a] 'duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation.'" *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (quoting *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011)).  The failure to preserve relevant evidence, "once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences." *Id.* (quoting *Thompson v. U.S. Dep't of Hous. & Urban*

---

[1] The parties' agreement to a bench trial was confirmed during the hearing on July 17, 2020.

*Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003)).  "Spoliation is the destruction or material alteration of evidence, or the failure to otherwise preserve evidence, for another's use in litigation."  *Id.* (citing *Ashton*, 772 F. Supp. 2d at 799-800); *see Pettit v. Smith*, 45 F. Supp. 3d 1099, 1104 (D. Ariz. 2014) (same).

Rule 37(b)(2) permits a court to sanction a party for disobeying a discovery order, and Rule 37(e) permits a court to sanction a party for losing or destroying ESI it had a duty to preserve.  Plaintiffs do not contend that Intel violated a discovery order or that a negative inference otherwise is warranted under Rule 37(b)(2).  Nor do Plaintiffs address Rule 37(e) in their motion.  *See* Doc. 207.  Plaintiffs instead seek a negative inference based on the Court's inherent authority to make appropriate rulings in response to the spoliation of non-ESI evidence.  *Id.* at 3 (citing *Glover v. Bic Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)).

The evidence Intel allegedly failed to preserve – electronic data recorded by the Altair detector (*see id.* at 2) – clearly constitutes ESI.  Plaintiffs note in their motion that the Altair detector "has the ability to store data readings."  Doc. 207 at 5.  They noted in their reply brief that Altair detectors "have the capability to log their data, and this data can be uploaded to a computer."  Doc. 215-1 at 8.[2]

Plaintiffs argued during the July 17 hearing that the data recorded on the Altair detector is not ESI within the meaning of Rule 37(e) because it was not stored on a computer system, but this is too narrow a reading of the phrase "electronically stored information."  That phrase was first added to the Federal Rules of Civil Procedure in 2006 and is used in a number of rules.  *See*, *e.g.*, Fed. R. Civ. P. 16, 26, 34, 37.  Rule 34 states that ESI includes "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in *any medium* from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form."  Fed. R. Civ. P. 34(a)(1)(A) (emphasis added).  The 2006

---

[2] *See also* MSA, The Safety Company, Home/Portable Gas Detection/Multi-Gas/ ALTAIR® 5X Multigas Detector, available at https://us.msasafety.com/c/ALTAIR %C2%AE-5X-Multigas-Detector/p/000080001600001023 (last visited July 9, 2020).

advisory committee note to Rule 34 explains that the meaning of ESI "is expansive and includes any type of information that is stored electronically." Fed. R. Civ. P. 34(a)(1) advisory committee note to 2006 amendment. Although Rule 37(e) was not amended to its current form until 2015, the advisory committee note for the 2015 amendment makes clear that it was intended to apply to ESI as defined broadly in 2006: "The new rule applies only to electronically stored information, also the focus of the 2006 rule." Fed. R. Civ. P. 37(e) advisory committee note to 2015 amendment. That the 2015 rule was not limited to data stored on a computer system – as Plaintiffs argued at the hearing – is also made clear by the advisory committee's observation that the amendment to Rule 37(e) was warranted by "the ever-increasing volume of electronically stored information and *the multitude of devices that generate such information*[.]" *Id.* (emphasis added). The Altair detector is one of those devices, and data recorded electronically on it clearly constitute ESI within the meaning of Rule 37(e).

Plaintiffs' citation to *Glover* and their reliance on the Court's inherent authority to sanction a party for spoliating evidence is not persuasive. "The 2015 amendment to Rule 37(e) now 'forecloses reliance on inherent authority' to determine whether and what sanctions are appropriate for a party's loss of discoverable ESI." *Small v. Univ. Med. Ctr.*, No. 2:13-CV-0298-APG-PAL, 2018 WL 3795238, at *66 (D. Nev. Aug. 9, 2018) (quoting Rule 37(e) advisory committee's note to 2015 amendment); *see Sherwood v. BNSF Ry. Co.*, No. 2:16-CV-00008-BLW, 2019 WL 1413747, at *1 (D. Idaho Mar. 28, 2019) (noting that *Glover* may be revisited given the 2015 amendment to Rule 37(e)).

The drafters of Rule 37(e) specifically "intended to preempt use of other sources of sanctions – such state law or the long-established 'inherent power' doctrine – and require findings consistent with Rule 37(e) as the only path to remedying the loss of [ESI]." *Stevens v. Brigham Young University-Idaho*, No. 4:16-CV-530-BLW, 2019 WL 6499098, at *3 (D. Idaho Dec. 3, 2019). They did so because they were seeking to bring uniformity to an area of the law that had been badly splintered by various courts' reliance on inherent authority. *See* Rule 37(e) advisory committee note to 2015 amendment ("Federal circuits

have established significantly different standards for imposing sanctions or curative measures on parties who fail to preserve [ESI]. . . . Rule 37(e) . . . authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures.  It therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used.").

Once adopted through the procedures of the Rules Enabling Act, Rule 37(e) became the controlling authority for sanctions that can be imposed for the loss of ESI.  *See* 28 U.S.C. § 2072 ("All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.").  The exclusive nature of Rule 37(e) sanctions for the loss of ESI has been widely recognized.  *See*, *e.g.*, *Mannion v. Ameri-Can Freight Sys. Inc.*, No. CV-17-03262-PHX-DWL, 2020 WL 417492, at *5 (D. Ariz. Jan. 27, 2020) ("[A] court cannot rely on its inherent authority or state law when deciding whether sanctions based on the loss of ESI are appropriate – the standards supplied by Rule 37(e) are exclusive.") (citing S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 37, at 1073 (2018)); *Nguyen v. Lotus by Johnny Dung, Inc.*, No. SACV 17-1317 JVS (JDEx), 2019 WL 1950294, at *4 (C.D. Cal. Mar. 14, 2019) ("Rule 37(e) . . . was amended to establish the findings necessary to support certain curative measures for failure to preserve [ESI].  This amendment 'forecloses reliance on inherent authority . . . to determine when certain measures should be used' to address spoliation of [ESI].") (emphasis in original); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2018 WL 646701, at *14 (N.D. Cal. Jan. 30, 2018) ("Because the evidence in question consists of [ESI], [Rule] 37(e), not inherent authority, supplies the controlling legal standard."); *Tipp v. Adeptus Health Inc.*, No. CV-16-02317-PHX-DGC, 2018 WL 447256, at *3 (D. Ariz. Jan. 17, 2018) ("A party seeking sanctions for spoliation of [ESI] must address the factors set forth in Rule 37(e) . . . . That rule, which was amended on December 1, 2015, identifies the circumstances under which various kinds of sanctions can be imposed for the loss of ESI.").  Plaintiffs' reliance on *State v. Willits*, 393 P.2d 274 (Ariz. 1964), is unhelpful for the same reason.  *See* Doc. 207 at 6.

6

Plaintiffs do not address the requirements of Rule 37(e) in their motion. *See* Doc. 210 at 3. Intel's response argues that a negative inference is not appropriate under Rule 37(e) because Plaintiffs do not contend that Intel acted with intent to deprive Plaintiffs of ESI. *Id.* at 11-14. Plaintiffs counter in their reply that a negative inference is warranted under Rule 37(e). Doc. 215-1 at 10-12.

### B.   Negative Inferences Under Rule 37(e).

Under Rule 37(e), if ESI that "should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> > (A) presume that the lost information was unfavorable to the party;
> >
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> >
> > (C) dismiss the action or enter a default judgment.

There are two levels of sanctions under Rule 37(e). Rule 37(e)(1) permits a court, upon finding prejudice to another party from loss of ESI, to order measures no greater than necessary to cure the prejudice. Rule 37(e)(2) permits a court to impose more severe sanctions – including a negative inference – only if it finds that the spoliating party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2); *see Miller v. Thompson-Walk*, No. CV 15-1605, 2019 WL 2150660, at *10 (W.D. Pa. May 17, 2019); *Sherwood*, 2019 WL 1413747, at *1; *Mfg. Automation & Software Sys., Inc. v. Hughes*, No. CV 16-8962-CAS (KSX), 2018 WL 5914238, at *6 (C.D. Cal. Aug. 20, 2018); *Leidig v. Buzzfeed, Inc.*, No. 16-CV-542, 2017 WL 6512353, at *7 (S.D.N.Y. Dec. 19, 2017).

"Rule 37(e)(2)'s drafters included its intent standard with a specific purpose: to reject cases that had authorized an adverse-inference instruction 'on a finding of negligence or gross negligence.'" *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, No. 3:12-CV-00463, 2018 WL 1542040, at *18 (M.D. Tenn. Mar. 29, 2018) (quoting Rule 37(e)(2) advisory committee's note to 2015 amendment).  The reason was explained by the Advisory Committee:

> Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence.  Negligent or even grossly negligent behavior does not logically support that inference.  Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have.

Fed. R. Civ. P. 37(e) advisory committee note to 2015 amendment.

Plaintiffs do not contend that Intel intentionally lost or destroyed data of $H_2S$ levels to preclude Plaintiffs from using the data in litigation.  Plaintiffs instead assert that the Altair detector "MacDonald used on the night of the incident to check $H_2S$ emission levels has the ability to store data readings, *but for whatever reason* Intel did not preserve the data collected that night."  Doc. 207 at 5 (emphasis added).  "Whatever reason" is not sufficient to support an adverse inference under Rule 37(e)(2).  Without evidence that Intel's reason was to deprive Plaintiffs of the collected data, a negative inference is not available.  *See Wolff v. United Airlines, Inc.*, No. 1:18-CV-00591-RM-SKC, 2019 WL 4450255, at *4 (D. Colo. Sept. 17, 2019) (declining to impose a severe sanction under Rule 37(e)(2) where Plaintiff "produced no evidence to suggest that Defendant, when failing to suspend its automatic deletion of emails, acted with the intent to deprive Plaintiff of that evidence"); *Robinson v. Renown Reg'l Med. Ctr.*, No. 3:16-CV-00372-MMD-WGC, 2017 WL 2294085, at *3 (D. Nev. May 24, 2017) (denying motion for spoliation sanctions where the Plaintiff presented "no credible evidence of any intent by Renown to deprive Plaintiff of

8

the telephonic data, an indispensable element of the criteria for imposition of [an] adverse jury instruction"); *Porter v. City & Cty. of S.F.*, No. 16-CV-03771-CW(DMR), 2018 WL 4215602, at *4 (N.D. Cal. Sept. 5, 2018) (finding an adverse inference instruction unwarranted where there was no evidence that the defendant intentionally spoliated a phone call record).  The Court will deny Plaintiffs' motion for a negative inference to the extent it is based on Intel's alleged failure to preserve electronic data the Altair detector collected on the night of the incident.[3]

Plaintiffs contend that the factfinder must be fully informed of the reasons behind Intel's single $H_2S$ measurement of 11.7 ppm so that it may evaluate that evidence in the appropriate context.  Doc. 215-1 at 12.  The Court agrees.  Plaintiffs will be free at trial to present admissible evidence about the measurement and other relevant facts, and to argue that the measurement is not a reliable indicator of Alsadi's $H_2S$ exposure.

## C.    Evidence Intel Did Not Collect.

Plaintiffs assert that Intel was required to have early warning detection systems in place for hazardous emissions, including a "fixed 24/7 monitoring system" and "personal monitoring devices[.]"  Doc. 207 at 5-6.  Plaintiffs claim that Intel is to blame for the lack of adequate data because it had no such systems in place at the time of the incident.  *Id.* at 3.

But spoliation sanctions apply when a party has lost or destroyed evidence, not when it has failed to create evidence.  *See Mizzoni v. Allison*, No. 3:15-cv-00313-MMD-VPC, 2018 WL 3203623, at *4 (D. Nev. Apr. 4, 2018).  "When determining whether to impose discovery sanctions for spoliation, the threshold question that the court must decide is whether relevant evidence existed.  If no relevant evidence existed, then the motion for spoliation is moot."  *Burton v. Walgreen Co.*, No. 2:14-CV-84 JCM VCF, 2015 WL 4228854, at *2 (D. Nev. July 10, 2015)); *see Garcia-Garrido v. Outback Steakhouse of Fla.*, LLC, No. 2:16-CV-01294-CWH, 2018 WL 2434062, at *4 (D. Nev. May 30, 2018)

---

[3] Given this ruling, the Court need not decide whether Intel had a duty to preserve ESI or when the duty was triggered.  *See* Docs. 207 at 3-4, 210 at 6-9.

("[B]efore a court will sanction a party for spoliation of relevant evidence, the moving party must demonstrate that the relevant evidence existed."); *Lakes v. Bath & Body Works, LLC*, No. 2:16-CV-02989 MCE AC, 2019 WL 2124523, at *4 (E.D. Cal. May 15, 2019) ("The court will not order an adverse inference instruction with respect to documents related to the possible chemical analysis or the alleged recall of the Pina Colada candle because there is an insufficient basis to conclude that such documents actually exist.").

The Court will deny Plaintiffs' motion for a negative inference.  This ruling does not preclude Plaintiffs from presenting admissible evidence concerning Intel's alleged failure to collect data of hazardous emission levels.

### III.    Plaintiffs' MIL Regarding the 11.7 ppm Measurement of $H_2S$ (Doc. 241).

Plaintiffs move to preclude Intel from presenting evidence or argument that 11.7 ppm was the maximum level of $H_2S$ that Alsadi inhaled during the incident because any such suggestion has no evidentiary basis.  Doc. 241.  Intel notes that 11.7 ppm was the highest measured level of $H_2S$ in the vicinity of Alsadi's alleged injury.  Doc. 254 at 2; *see* Doc. 196-10 at 5.  Intel contends that it is Plaintiffs, not Intel, who would confuse the factfinder about the amount of $H_2S$ to which Alsadi was exposed.  Doc. 254 at 3.

Alsadi's level of $H_2S$ exposure will be for the factfinder to decide on the basis of available evidence.  That evidence includes the 11.7 ppm reading by the Altair detector. The factfinder will be free to determine the significance, if any, of Intel's failure to take additional measurements of $H_2S$ levels.  *See E.E.O.C. v. GLC Restaurants, Inc.*, No. CV05-618 PCT-DGC, 2007 WL 30269, at *8 (D. Ariz. Jan. 4, 2007) (denying motion in limine where the significance of a personnel file's absence was for the jury to decide).  The Court does not agree that Defendants should be precluded from presenting available evidence on $H_2S$ concentration levels and making arguments about the findings that should be made from that evidence.  Plaintiffs may do the same.  Now that this is a bench trial, the Court finds no risk of unfair prejudice or confusion and will deny Plaintiffs' MIL.  Doc. 241.

/ / /

/ / /

1    **IV.    Plaintiffs' MIL on Causation and Permanence of Symptoms (Doc. 208).**

2          Alsadi filed a workers' compensation claim with the Industrial Commission of

3    Arizona ("ICA") several months before bringing this tort action in September 2016.

4    Alsadi, JLL, and Hartford Accident & Indemnity Company ("Hartford") – JLL's workers'

5    compensation insurer – were parties to the ICA proceeding.  In October 2017, and pursuant

6    to a stipulation of the parties, the ICA issued a decision awarding Alsadi permanent partial

7    disability.  *See* Doc. 208-6.  Plaintiffs now invoke the doctrine of offensive collateral

8    estoppel and contend that the ICA's decision bars Intel from disputing causation and the

9    permanence of Alsadi's injury in this case.  Doc. 208 at 2-5.  The Court does not agree.

10          **A.    Collateral Estoppel.**

11          Federal courts apply the collateral estoppel doctrine of the state where the prior

12    decision was rendered.  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81

13    (1984); *see Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir. 1994).   Under

14    Arizona law, offensive collateral estoppel applies where (1) the issue was actually litigated

15    in the prior proceeding, (2) there was a full and fair opportunity to litigate the issue,

16    (3) resolution of the issue was essential to the decision, (4) a valid and final decision on the

17    merits was entered, and (5) there is common identity of the parties.  *Hullett v. Cousin*, 63

18    P.3d 1029, 1034 (Ariz. 2003); *see also Garcia v. Gen. Motors Corp.*, 990 P.2d 1069, 1073

19    (Ariz. Ct. App. 1999); *N. Improvement Co. v. United States*, 398 F. Supp. 3d 509, 527 (D.

20    Ariz. 2019).   As the parties asserting collateral estoppel, Plaintiffs bear the burden of

21    establishing each of the five elements.  *Bayless v. ICA*, 880 P.2d 654, 659 (Ariz. Ct. App.

22    1993).  Plaintiffs have failed to establish the first, second, and fifth elements.

23          **1.    The Issues Were Not Actually Litigated.**

24          "An issue is 'actually litigated' when it 'is properly raised by the pleadings or

25    otherwise, and is submitted for determination, and is determined.'"  *Faulkner v. Wausau*

26    *Bus. Ins. Co.*, No. CV-10-1064-PHX-ROS, 2011 WL 13092025, at *3 (D. Ariz. June 1,

27    2011) (quoting *Chaney Bldg. Co. v. City of Tucson*, 716 P.2d 28, 30 (Ariz. 1986)).  Where

28    a decision is entered by stipulation, consent, or default, "none of the issues is actually

litigated." *Id.*  And "[i]f the issue was not actually litigated, that issue simply cannot be given issue preclusive effect." *Id.*; *see 4501 Northpoint LP v. Maricopa Cty.*, 128 P.3d 215, 219-20 (Ariz. 2006) ("Issue preclusion . . . applies only as to issues that have in fact been litigated and were essential to a prior judgment.").

Plaintiffs assert that "[i]n determining the amount of benefits to which Alsadi was entitled, the ICA necessarily had to determine whether his medical limitations were caused by the [i]ncident and whether they were permanent[.]" Doc. 208 at 6.  But Plaintiffs admit that the ICA's decision was based in part on a stipulation between the parties.  *Id.* at 4, 9; *see also* Doc. 208-6 at 2 (ICA decision explaining that Hartford, "[t]he defendant insurance carrier[,] notified the [ICA] that a permanent partial disability pursuant to A.R.S. § 23-1047 exists").  "The Arizona Supreme Court does not apply issue preclusion when the issue was resolved by way of stipulation." *Faulkner*, 2011 WL 13092025, at *3; *see Chaney Bldg.*, 716 P.2d at 30.

Plaintiffs argue that the ICA considered a great deal of evidence before determining the amount of Alsadi's benefits, but have not shown that the issues of causation and permanence were "actually litigated" in the ICA proceedings.  *Hullett*, 63 P.3d at 1034.  Because the issues Plaintiffs "asks the Court to give preclusive effect to were not 'actually litigated' before the ICA [they] are not binding on [Intel] in this case." *Faulkner*, 2011 WL 13092025, at *3; *see Kloberdanz v. Pellino*, No. 2:13-CV-2182 JWS, 2017 WL 20253, at *2 (D. Ariz. 2017) ("The party asserting issue preclusion bears the burden of proof as to all elements and must introduce a sufficient record to reveal the controlling facts and the exact issues litigated.") (citation omitted).

## 2.    Intel Had No Full and Fair Opportunity to Litigate the Issues.

Plaintiffs assert that "JLL had a full and fair opportunity to litigate this matter and did so." Doc. 7 at 13.  But JLL's litigation of issues in the ICA proceeding is irrelevant.  Plaintiffs seek to bind Intel, which had no opportunity to participate in the ICA proceedings between Alsadi, JLL, and Hartford.  *See* A.R.S. § 23-901(10) (defining an "[i]nterested party" for purposes of Arizona's workers' compensation statute as "the employer, the

1  employee, . . . the commission, [and] the insurance carrier"); *see also Smith v. CIGNA*

2  *HealthPlan of Ariz.*, 52 P.3d 205, 212 (Ariz. Ct. App. 2002) (finding that the plaintiff "was

3  never afforded a 'full and fair opportunity' to litigate the issues that were before the NLRB"

4  where she "was 'not allowed to examine or cross-examine witnesses, lodge objections,' or

5  otherwise litigate her claim") (citations omitted).

6  **3.    There Is No Common Identity of the Parties.**

7  "Although the doctrine of collateral estoppel precludes parties and their privies from

8  relitigating issues, it is axiomatic that a stranger to a litigation may not be bound by a

9  determination made therein for purposes of subsequent litigation." *Fremont Indem. Co. v.*

10 *ICA*, 697 P.2d 1089, 1092 (Ariz. 1985) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill.*

11 *Found.*, 402 U.S. 313, 329 (1971)).  "This rule is premised upon preventing the inherent

12 unfairness of binding a party to an issue determination he had no opportunity to contest."

13 *Id.* at 1092-93.

14 Plaintiffs make several arguments in an attempt to show that Intel was not a stranger

15 to the ICA proceedings.  Doc. 208 at 5, 7-9.  None has merit.

16 Plaintiffs contend that JLL is the "real party in interest" in this case because JLL

17 accepted Intel's tender of defense and will be responsible for paying any judgment or

18 settlement amount.  Doc. 208 at 5.  Plaintiffs argue that collateral estoppel "applies to

19 prevent JLL, Alsadi's employer standing in Intel's shoes, from relitigating issues it has

20 already conceded and that were properly decided by the ICA."  *Id.* at 8 (citing *Fremont*,

21 697 P.2d at 1095; *Pollard v. ICA*, 767 P.2d 22, 23-24 (Ariz. Ct. App. 1988)).

22 It must be remembered, however, that Intel, not JLL, is the defendant in this case.

23 Plaintiffs must establish Intel's liability if they are to recover anything in this litigation.

24 The fact that JLL has agreed to defend and indemnify Intel does not change this fact; it

25 merely means that Intel, if held liable, can turn to JLL for indemnification.  The question

26

27

28

1   to be litigated remains Intel's liability, and Intel took no part in the previous ICA

2   proceeding.[4]

3        Plaintiffs' reliance on *Fremont* is not persuasive.  The Arizona Supreme Court made

4   clear in *Freemont* that the "common identity of the parties" element "applies in

5   compensation-related applications of the [collateral estoppel] doctrine."  697 P.2d at 1093.

6   *Fremont* involved separate work-related injuries sustained by the claimant in New Jersey

7   and Arizona.  In deciding whether to treat the New Jersey disability judgment as dispositive

8   on the issue of earning capacity, the Arizona Supreme Court held that the parties were not

9   bound under principles of collateral estoppel:  "[B]ecause neither the employer nor the

10  carrier were parties to the New Jersey disability judgment, neither could be collaterally

11  estopped . . . from contesting that judgment's validity."  *Id.* at 1094.

12       Plaintiffs cite no Arizona case holding that one who was not a party to ICA

13  proceedings can be bound by ICA findings in a subsequent civil action for tort damages.

14  Plaintiffs' citation to *Pollard* is inapposite.  Doc. 208 at 8.  *Pollard* held that "where the

15  employer is the same for two industrial injuries, and the first injury is determined to be

16  scheduled, a subsequent carrier may not challenge that characterization[.]"  767 P.2d at 24.

17  This case does not involve separate injuries involving the same employer, and it is Intel –

18  not JLL's carrier – that seeks to challenge causation and the permanence of symptoms in

19  this tort action.

20        Plaintiffs' citation to *Special Fund Division/No Insurance Section v. ICA*, 891 P.2d

21  854 (Ariz. Ct. App. 1994), fares no better.  Doc. 208 at 7, 9.  In that case, the Special Fund

22  Division of the ICA brought a special action challenging a disability classification of a

23  successive claim because it was not a party to the underlying proceedings.  891 P.2d

24  at 858-59.  The court of appeals "concluded that notice and an opportunity to be heard are

_____

26       [4] Intel notes that if JLL is in fact the real party in interest, this tort action must be
27  dismissed based on the exclusivity provisions of the workers' compensation statute.
    Doc. 211 at 9; *see* A.R.S. § 23-1022(A) ("The right to recover compensation pursuant to
    this chapter for injuries sustained by an employee . . . is the exclusive remedy against the
28  employer[.]").  Plaintiffs' briefing is silent on this point.

not required to bind a party *such as the Special Fund Division*[.]" *Id.* at 859 (emphasis added).  Plaintiffs cite no case extending this rule to a private-party defendant in a tort action.

Plaintiffs further contend that "based on the nature of the relationship between Intel and JLL in this litigation, they clearly stand in privity with each other." Doc. 208 at 8.  But "privity between a party and a non-party requires both a substantial identity of interests and a working or functional relationship in which the interests of the non-party are presented and protected by the party in the litigation." *Hall v. Lalli*, 977 P.2d 776, 779 (Ariz. 1999) (internal quotations and citation omitted).  The protection must have occurred in the prior litigation – the one argued to have preclusive effect. *Id.* ("the determinative question was whether mother and child had been in privity *at the time of the previous paternity claim*") (emphasis added).  Plaintiffs have not shown that JLL and Intel had a working or functional relationship in the ICA proceedings, or that JLL protected Intel's interests in that proceeding.  JLL clearly did not protect Intel's interests by stipulating to causation and permanency, issues that are hotly contested in this case and which affect the amount of tort damages that could be awarded.  In short, there is no "substantial identity of interests" between Intel and JLL or Hartford.  *Hall*, 977 P.2d at 779.

Plaintiffs cite *French v. Rishell*, 254 P.2d 26 (Cal. 1953), for the proposition that JLL was acting as Intel's agent in the ICA proceedings and Intel therefore is bound by the ICA's decision. Doc. 208 at 9.  In *French*, a fire department's pension board claimed that it was not bound by a decision of California's industrial accident commission where the city, but not the pension board, was a party to the proceedings.  But under the city charter, the pension board and the city had an agency relationship.  *French*, 254 P.2d at 29.  Plaintiffs present no similar evidence to support their agency theory, and Intel notes that the Facilities Management Services Agreement between Intel and JLL makes clear that JLL is not Intel's agent.  Doc. 211 at 11-12; see Doc. 211-3 at 4 ("No contract of agency . . . [is] intended hereby.  [JLL] is not an agent of Intel and has no authority to represent Intel as to any matters[.]").

1

### 4.    Collateral Estoppel Conclusion.

Plaintiffs have not shown that the issues of causation and permanence were actually litigated in the ICA proceedings, that Intel had a full and fair opportunity to litigate those issues, or that there is common identity of the parties.  *See Hullett*, 63 P.3d at 1034. Collateral estoppel therefore does not apply and Intel is not barred from challenging causation and the permanence of Alsadi's symptoms.

### B.    Presumptive Validity.

Alternatively, Plaintiffs argue that the ICA's decision is entitled to "presumptive validity."  Doc. 208 at 10-12.  The Court does not agree.

"Because we live in a society with a highly mobile workforce, to require that an injured employee prove again the fact and degree of a prior disability, remote in place and time, would place an impractical burden upon him."  *Fremont*, 697 P.2d at 1095.  Arizona courts thus have discretion to apply a presumptive validity rule in the workers' compensation context, which allows workers to continue receiving benefits awarded in one state when they move to another state.  *See id.* ("[B]y reasons of comity, we recognize that the claimant suffered an industrial injury in New Jersey.").  In this case, Plaintiffs seek tort damages allegedly caused by negligent conduct in Arizona, not workers' compensation benefits awarded in another state.

Citing *Gnatkiv v. Machkur*, 372 P.3d 1010, 1015 (Ariz. Ct. App. 2016), Plaintiffs also contend that "'no compelling reason exists not to defer to the' ICA's findings." Doc. 208 at 11.  But as explained above, the ICA's decision was based in large part on a stipulation that a permanent disability exists.  *See* Doc. 208-6 at 2.  Neither the permanence of Alsadi's symptoms nor the issue of causation was actually litigated before the ICA.  The Court, in its discretion, declines to accord presumptive validity to the ICA's decision.  *See Fremont*, 697 P.2d at 1095 ("[T]he principle of 'comity' is that the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state or jurisdiction, not as a matter of obligation, but out of deference and mutual respect.");

16

*Gnatkiv*, 372 P.3d at 1014 ("The scope and applicability of comity rest within the court's discretion.").

The Court will deny Plaintiffs' motion to exclude evidence and argument challenging causation and the permanence of Alsadi's symptoms.  Doc. 208.

## V.   Plaintiffs' MIL to Exclude Evidence of Alsadi's Convictions (Doc. 240).

On September 30, 2010, Alsadi was sentenced to probation after pleading guilty to misdemeanor simple assault and disorderly conduct in Pennsylvania.  Doc. 258-1 at 3. Plaintiffs move to exclude evidence of the convictions under Federal Rules of Evidence 609 and 403 because the convictions do not involve dishonesty and their probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.  Doc. 240 at 1-2.

During oral argument, the parties agreed that the COVID-delayed trial in this case will now occur more than 10 years after Alsadi's conviction.  As a result, the conviction is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."  Fed. R. Evid. 609(b).  This standard is not met.  The conviction has little or no probative value – it bears no relationship to the facts of this case, and would have little impeachment effect.  *See* 4 Weinstein's Federal Evidence § 609.05 (2020) ("crimes of violence generally have limited probative value concerning the witness's character for truthfulness").  The Court will grant Plaintiffs' motion to exclude evidence of Alsadi's convictions for assault and disorderly conduct.  Doc. 240.[5]

## VI.   Plaintiffs' MIL to Exclude Untimely Disclosed Evidence (Doc. 242).

Plaintiffs move to exclude testimony from Intel employee Nathan Anders and four documents Intel disclosed in its sixth supplemental disclosure statement on April 19, 2019.

---

[5] Intel asserts that Plaintiffs waived their objection by not raising it in the meet and confer process (*see* LRCiv 7.2(l)), but doing so clearly would not have changed the briefing as shown by Intel's opposition to the motion.  *See GEICO Indem. Co. v. Smith*, No. 3:12-CV-08127 JWS, 2017 WL 1282789, at *1 n.1 (D. Ariz. Apr. 5, 2017) (electing to waive the meet and confer requirement in light of the parties' briefing).

Doc. 242; *see* Doc. 242-1 at 3-4.  Intel does not oppose the motion with respect to the four documents at issue.  The Court will grant the MIL in this regard.[6]

On May 16, 2018, Plaintiffs' served a Rule 30(b)(6) deposition notice on Intel.  Doc. 242 at 2.  Topic 9 of the notice sought a knowledgeable deponent to explain the "meaning and significance of . . . alarm messages, event titles, and report details contained in the Alarm Logs dated 2/26/16, and the ERT Event Details Report dated 1/26/18[.]"  *Id.*  Intel designated witness Robbie McGill.  *Id.*  She appeared for her deposition on September 14, 2018 – the discovery cutoff date – and testified that she was not able to address Topic 9.  *Id.*  More than four months later, on February 4, 2019, Intel disclosed Nathan Anders as its Rule 30(b)(6) witness for Topic 9.  Doc. 255-1 at 2.

Citing Rule 37(c)(1), Plaintiffs argue that Intel should be precluded from calling Anders as a witness at trial due to the late disclosure.  Doc. 242 at 2-3.  Rule 37(c)(1) provides that a party that fails to disclose information required by Rule 26(a) "is not allowed to use that information . . . at a trial, unless the failure was substantially justified or harmless."  Intel asserts that any prejudice is of Plaintiffs' own making because Intel offered to make Anders available for a deposition.  Doc. 255 at 3.  But Intel's offer was made months after the close of fact discovery, and the Court had made clear before that time that "**no further** extensions of deadlines shall be granted absent extraordinary circumstances."  Doc. 98 at 1 (emphasis in original).  Intel notes that it had asked Plaintiffs about the relevance of Topic 9, but Intel never sought a court order precluding testimony by a Rule 30(b)(6) witness on the topic.

During the July 17 hearing, Intel argued that its delay in identifying Anders was substantially justified because Plaintiffs worked cooperatively with Intel in awaiting the identification of a Topic 9 witness.  But "the burden is on the party facing the sanction to demonstrate that the failure to comply . . . is substantially justified or harmless."

---

[6] Two of the documents are job descriptions dated September 2015 and July 2016, the third document is a JLL organizational chart dated December 2015, and the fourth is an "Events Log" detailing the dosing of Thio-Red.  Doc. 242 at 3.

*Transoceanic Cable Ship*, 2018 WL 3521174, at *2-3 (quoting *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008)); *see Yeti by Molly*, 259 F.3d at 1107 ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."). And Intel makes no showing that plaintiffs acquiesced in the four-month delay.  The only communication attached to Intel's response is an email identifying Anders four months after the close of discovery.  Doc. 255-1 at 2.

Absent a showing of substantial justification or harmlessness, the exclusion of untimely disclosed witnesses under Rule 37(c)(1) "has been described by courts as a 'self-executing, automatic sanction to provide a strong inducement for disclosure of material.'" *West v. City of Mesa*, 128 F. Supp. 3d 1233, 1247 (D. Ariz. 2015) (quoting *Yeti by Molly*, 259 F.3d at 1106); *see* Fed. R. Civ. P. 37 advisory committee's note to 1994 amendment. Indeed, "Rule 37(c)(1) gives teeth to [disclosure] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly*, 259 F.3d at 1106.  Because Intel has not shown that its failure to timely disclose Anders as a witness is substantially justified or harmless, the Court will grant Plaintiffs' motion and preclude Anders from testifying at trial.  *See Nunes v. Cty. of Stanislaus*, No. 1:17-cv-00633-DAD-SAB, 2020 WL 1324808, at *1 (E.D. Cal. Mar. 20, 2020) ("Where a party does not provide a sufficient explanation for its late disclosure, preclusion of the witness and/or evidence is appropriate."); *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1061-62 (9th Cir. 2005) (upholding preclusion where party did not provide adequate explanation for late disclosure); *Quevedo v. Trans-Pacific Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (affirming preclusion of witness due to the plaintiff's failure to justify his disregard for court's discovery deadline); *Carpenter v. Universal Star Shipping, S.A.*, 924 F.2d 1539, 1547 (9th Cir. 1991) (upholding decision to disregard evidence based on "tardy submission of the evidence without explanation").

**VII.   Plaintiffs' MIL Regarding the Cause of the Off-Gassing Incident (Doc. 243).**

Plaintiffs move to preclude Intel from presenting evidence or argument that it did not cause the IWS "off-gassing" incident because this would confuse and mislead the jury

19

regarding the concept of negligence and would invite the jury to assign fault to JLL. Doc. 243 at 1.   Plaintiffs contend that because Intel retained affirmative duties with respect to the safety of the IWS, "it retained sufficient control to be liable for negligently exercising its safety responsibilities."  *Id.* at 2 (citing *Rause v. Paperchine, Inc.*, 743 F. Supp. 2d 1114, 1122 (D. Ariz. 2010)).

Intel notes, correctly, that Plaintiffs essentially seek a summary judgment ruling on the issues of duty and causation.  Doc. 256 at 1.  A "motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed."   *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 (9th Cir. 2013) (citing *Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 968 (9th Cir. 2001)).  Moreover, the issue of retained control is "a *question of fact* which ordinarily should be left to the fact finder."  Doc. 204 at 29 (quoting *Lewis v. N.J. Riebe Enters., Inc.*, 825 P.2d 5, 11 (Ariz. 1992) (emphasis in *Lewis*); *see also Lee v. M & H Enters., Inc.*, 347 P.3d 1153, 1159 (Ariz. Ct. App. 2015) (the issue of retained control generally is for the jury to decide "[b]ecause the issue of a breach of duty is inextricably linked with the scope of retained control") (citing *Lewis*).

The Court will deny Plaintiffs' motion to exclude evidence that Intel did not cause the off-gassing incident.  Doc. 243.

**VIII.  Intel's MIL Regarding Health Effects Not at Issue (Doc. 231).**

Intel moves to exclude (1) the use of "inflammatory language" to describe $H_2S$, such as the terms "toxic," "hazardous," and "poisonous"; (2) evidence and argument regarding health effects that $H_2S$ exposure can cause but that were not suffered by Alsadi; and (3) testimony from Plaintiffs' standard of care expert, Greg Gerganoff, about the dangerous nature of $H_2S$ and health effects caused by exposure to the gas.  Doc. 231.

### A.    The Purported Inflammatory Language.

The Environmental Protection Agency classifies $H_2S$ as an "extremely hazardous substance."   40 C.F.R. pt. 355, App. B.   The Occupational Safety and Health Administration ("OSHA") describes $H_2S$ as "a highly flammable, explosive gas" that

"produces other toxic vapors and gases, such as sulfur dioxide."  U.S. Dep't of Labor, OSHA, https://www.osha.gov/SLTC/hydrogensulfide/hazards.html (last visited July 9, 2020).  The OSHA fact sheet for $H_2S$ explains that it is an "extremely hazardous gas" and "both an irritant and a chemical asphyxiant[.]"  OSHA Fact Sheet, https://www.osha.gov/ OshDoc/data_Hurricane_Facts/hydrogen_sulfide_fact.pdf (last visited July 9, 2020).  The Centers for Disease Control describes $H_2S$ as a "flammable, highly toxic gas," noting that "[t]here is no proven antidote for [$H_2S$] poisoning."  CDC, Agency for Toxic Substances and Disease Registry, https://www.atsdr.cdc.gov/mmg/mmg.asp?id=385&tid=67# (last visited July 9, 2020).  Thus, referring to $H_2S$ as toxic, hazardous, and poisonous is not inflammatory; it is a technically-correct description of the gas.  The Court will deny Intel's motion in this regard.

### B.  Potential Health Effects Caused by $H_2S$ Exposure.

Intel contends that reference to health effects caused by $H_2S$ that Alsadi did not experience would serve only to confuse and mislead the jury.  Doc. 231 at 2.  Because this will now be a bench trial, that risk is reduced significantly.  In addition, the potential dangers posed by exposure to $H_2S$ are relevant to the standard of care.  *See* Doc. 262 at 4. The Court does not find that the probative value of potential health effects caused by $H_2S$ exposure is substantially outweighed by the danger of confusing the issues or misleading the factfinder.  *See* Fed. R. Evid. 403; *see also Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 702 F. App'x 537, 541 (9th Cir. 2017) ("Given the relevance of the health-related evidence, the district court did not abuse its discretion in finding that its probative value was not substantially outweighed by the danger of unfair prejudice.").  The Court will deny Intel's motion in this regard.

### C.  Gerganoff's Proposed Testimony.

Gerganoff is a work-place safety expert whose opinions are based on his technical knowledge, training, and experience.  *See* Doc. 164-3.  He opines that Intel failed to reasonably safeguard workers from a known hazardous condition and the failure caused

Alsadi's injuries.  *See* Doc. 180 at 13.  The Court denied Intel's motion to exclude Gerganoff's safety-related opinions.  Doc. 204 at 19-22.

Intel now moves to preclude Gerganoff from (1) describing $H_2S$ as "an extremely flammable gas, inhalation hazard, and deadly poison," and (2) opining that $H_2S$ "causes damage to the cardiovascular, central nervous, and respiratory systems" and is "known to cause apnea, coma, convulsions, dizziness, headache, weakness, irritability, insomnia, and stomach upset." Doc. 231 at 3 (quoting Doc. 164-4 at 4-5).  For reasons stated above, the Court will not preclude Gerganoff from describing $H_2S$ as an extremely flammable gas, inhalation hazard, or deadly poison, or from describing the health effects it is known to cause.

Gerganoff is not a medical causation exert – he expressly states that his "role in this matter was not to make determinations of medical causation[.]"  Doc. 181 at 5.  Instead, his "role is to address how Intel's knowledge of hazardous conditions associated with its wastewater treatment system should have steered its safety practices and procedures, and how Intel fell woefully short." *Id.*  Gerganoff may described the hazardous nature of $H_2S$ in opining on the adequacy of Intel's safety practices, but he may not give medical causation opinions – he may not opine that $H_2S$ caused any particular illness or symptoms in Alsadi.  *See* Doc. 262 at 4.  The Court will grant Intel's motion with respect to such causation opinions.

**IX.    Intel's MIL Regarding Causation and Alsadi's Symptoms (Doc. 232).**

Three of Plaintiffs' experts opined that Alsadi's alleged symptoms were caused by $H_2S$ exposure: treating physician Dr. Anselmo Garcia and rebuttal experts Drs. Kelly Johnson-Arbor and Charles Landers.  Applying Rule 702, the Court ruled that Dr. Garcia's causation opinions are not admissible and Dr. Landers's and Dr. Johnson-Arbor's opinions that exposure to $H_2S$ caused Alsadi to develop RADS are not admissible.  Doc. 204 at 3-13, 18-19.  The Court further held that Dr. Johnson-Arbor's general causation opinion concerning RADS is not relevant given the grant of summary judgment on Plaintiffs' claim that Alsadi's exposure to $H_2S$ caused RADS.  Doc. 216 at 8.  The Court made clear,

however, that it has made no ruling on the admissibility of any opinion of Dr. Johnson-Arbor that $H_2S$ can cause some of the symptoms Alsadi has experienced since the exposure. *Id.*

Intel now contends that Plaintiffs' experts "should be precluded from offering *any* opinions on causation of any of Alsadi's claimed symptoms or diseases, whatever Plaintiffs' experts choose to call such outcomes." Doc. 232 at 3 (emphasis in original). Plaintiffs concede that the Court has excluded all three experts from testifying to specific causation – that Alsadi's exposure caused his symptoms – and vow to abide by the Court's rulings. Doc. 266 at 2-3.[7]

## A.    Dr. Garcia.

Plaintiffs assert that Dr. Garcia's testimony will not stray beyond the observations and opinions he formed as part of Alsadi's treatment. Doc 266 at 3. They argue that such observations and opinions are "percipient witness" testimony, not expert testimony, and therefore are not subject to Rule 702 of the Federal Rules of Evidence. *Id.* 1-2. In support, Plaintiffs rely on two unpublished decision of the Ninth Circuit – *Hoffman v. Lee*, 474 F. App'x 503, 505 (9th Cir. 2012), and *Oakberg v. Zimmer, Inc.*, 211 F. App'x 578, 580 (9th Cir. 2006) – and one published decision – *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011). *Id.* The Court does not agree with Plaintiffs' arguments. The unpublished Ninth Circuit decision are not binding on the Court, and the published decision does not support their argument.

The published decision, *Goodman*, concerned the disclosure requirements of Rule 26 of the Federal Rules of Civil Procedure, not the admissibility of expert opinions under Rule 702 of the Federal Rules of Evidence. Whether a treating physician's testimony is expert testimony subject to Rule 702 or non-expert fact testimony (including non-expert opinions subject to Rule 701) must be determined by looking at the Federal Rules of

---

[7] The Court also found inadmissible Dr. Johnson-Arbor's opinions that Alsadi likely was exposed to concentrations of $H_2S$ higher than 11.7 ppm and that he likely has RADS. Doc. 204 at 16-18. Plaintiffs shall abide by these rulings as well.

23

Evidence.  What is more, Rule 26 was amended in 2010, after the decision in *Goodman*, to clarify the disclosure requirements for treating physicians like Dr. Garcia.[8]  A brief review of the rule's history is relevant to Plaintiffs' claim that Dr. Garcia can testify about his treatment of Alsadi without regard to Rule 702.

Before the 2010 amendments, Rule 26 required detailed expert reports from witnesses who were "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."  Fed. R. Civ. P. 26(a)(2)(B).  Because treating physicians generally were not retained or specially employed to provide expert opinions in a case, but instead were asked to testify and express opinions on the basis of their treatment of the plaintiff, they were not required to prepare expert reports.  *See* Fed. R. Civ. P. 26(a)(2)(B) advisory committee note to 1993 amendment ("A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.").  This is not because the physicians were not giving expert opinions, but because they were not "retained or specially employed" as required by Rule 26(a)(2)(B).

The Ninth Circuit drew a sensible line in *Goodman*: physicians can testify about conclusions and opinions formed during the course of their treatment of the plaintiff without having to provide a Rule 26(a)(2)(B) expert report, but they cannot express new opinions formed for purposes of the litigation without disclosing them in such a report.  In effect, physicians were deemed to be "retained or specially employed," and therefore subject to the report requirement, if they develop opinions for purposes of the litigation.  *Goodman*, 644 F.3d at 826 ("Today we join those circuits that have addressed the issue and hold that a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment.").

---

[8] *Goodman* was issued in 2011, but it concerned events that occurred before December 1, 2010, the effective date of the Rule 26 amendments.

The expert disclosures rules were amended in 2010 to close the discovery gap between retained experts who were required to provide a detailed report and non-retained experts who could provide expert testimony without a report.  Rule 26(a)(2)(C) was added to require that any party who planned to call a non-retained expert to express expert opinions must disclose the "subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702" and "a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ P. 26(a)(2)(C).  The advisory committee note provided this explanation:

> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705.  Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony.  Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C).

Fed. R. Civ. P. 26(a)(2)(C) advisory committee note to 2010 amendment.

These rules make clear, contrary to Plaintiffs' suggestion, that treating physicians can provide expert testimony subject to Rule 702 even when they are not required to provide an expert report.  For disclosure purposes, the line drawn in *Goodman* continues to make sense even after the 2010 amendments – treating physicians who will testify only to conclusions and opinions formed in the course of treating the plaintiff need only be disclosed in the party's Rule 26(a)(2)(C) summary of the testimony, but treating physicians who will express opinions developed outside of their treatment must provide a Rule 26(a)(2)(B) report for those opinions.  Both categories of physicians, however, are subject to challenges under Rule 702 because both can present expert opinions.  True, some of a treating physician's testimony may be purely factual ("I provided plaintiff with a breathing treatment on June 1, 2017"), but some may be expert opinion under Rule 702 even though the opinion was developed in the course of treatment ("I provided the June 1, 2017 breathing treatment because I had concluded that the plaintiff suffered from chemically-induced asthma due to his exposure on March 1, 2017.").

In summary, Plaintiffs are incorrect in their claim that Dr. Garcia can testify about his treatment of Plaintiff without regard to Rule 702.  If he expresses opinions formed during the course of treatment, those opinions likely will be based on based on Dr. Garcia's scientific, technical, or other specialized knowledge and therefore will be subject to the requirements of Rule 702.  *See* Fed. R. Evid. 701(c), 702.  As the Court stated in a previous order, "any testimony Dr. Garcia might give about the cause of Alsadi's injuries would be expert opinion under Rule 702."  Doc. 204 at 7 (citing cases).

The Court held in its previous order that Plaintiffs had not shown by a preponderance of the evidence that Dr. Garcia's causation opinions are based on sufficient facts or data to which reliable principles and methods had been applied reliably.  *Id.* at 10.  The Court therefore concluded that his causation opinions are not admissible under Rule 702.  *Id.*

Plaintiffs now suggest that Dr. Garcia may testify about "the *opinions*, actions, and observations formed during and relating to Alsadi's treatment."  Doc. 266 at 3 (emphasis added).  But the Court clearly has ruled that he cannot state causation opinions, and this ruling applies to opinions that identify the cause of Alsadi's injuries even if they are couched in language other than causation.  Intel may object if it thinks Dr. Garcia is expressing a causation opinion.  Further, any other opinions he states likely will be based on his scientific, technical, or other specialized knowledge and therefore will be subject to the requirements of Rule 702, even if the opinions were formed during the course of his treatment of Alsadi.  Intel may object if it believes any such opinion is not admissible under Rule 702.

**B.    Drs. Landers and Johnson-Arbor.**

Intel contends that Dr. Landers should be precluded from providing any causation testimony at trial with respect to any of Alsadi's symptoms.  Doc. 232 at 4.  The Court agrees.  The Court previously held that Plaintiffs have not shown by a preponderance of the evidence that Dr. Landers' causation opinion is based on reliable principles and methods applied reliably to the facts of this case.  Doc. 204 at 13.  The Court therefore held

that his causation opinion is not admissible under Rule 702.  *Id.*  As with Dr. Garcia, this ruling applies to any opinion that identifies the cause of Alsadi's injuries even if it is couched in language other than causation.  Intel may object if it thinks Dr. Landers is expressing a causation opinion.[9]

Intel contends that Dr. Johnson-Arbor should not be permitted to provide any causation testimony at trial with respect to any of Alsadi's symptoms.  Doc. 232 at 4.  The Court agrees as to specific causation.  The Court previously held that Plaintiffs have not shown by a preponderance of the evidence that Dr. Johnson-Arbor is qualified to render a specific causation opinion in this case or that her causation opinion is reliable.  Doc. 204 at 19.  The Court therefore held that her causation opinion is not admissible under Rule 702.  *Id.*  As with Drs. Garcia and Landers, this ruling applies to any opinion that identifies the cause of Alsadi's injuries even if it is couched in language other than causation.  Intel may object if it thinks Dr. Landers is expressing a causation opinion.

Plaintiffs suggest, however, that Dr. Johnson-Arbor may provide general causation opinions with respect to Alsadi's non-RADs symptoms.  Doc. 266 at 4.  The Court agrees.  The Court previously clarified that it "has made no ruling on the admissibility of any opinion of Dr. Johnson-Arbor that $H_2S$ can cause some of the symptoms Alsadi has experienced since the exposure event.  Intel has not challenged any such opinion."  Doc. 216 at 8.  Thus, the Court has not precluded Dr. Johnson-Arbor from giving a general causation opinion that $H_2S$ can cause symptoms of the kind Alsadi is experiencing.  But

---

[9] With respect to Dr. Landers, Plaintiffs note, correctly, that the Court found his diagnosis of RADS sufficiently reliable to be admissible under Rule 702.  *Id.* (citing Doc. 204 at 15).  But the Court made this finding before granting summary judgment to Intel on whether Alsadi's alleged exposure to $H_2S$ caused RADS.  Doc. 216 at 5.  Because Plaintiffs are now "precluded from seeking to recover for RADS" (*id.*), Dr. Landers' diagnosis of RADS is irrelevant.  *See id.* at 16 ("The Court will enter summary judgment on Plaintiffs' claim that Alsadi's exposure caused RADS, and with no such claim in the case, Dr. Johnson-Arbor's general causation opinion is not relevant.") (citing Fed. Rs. Evid. 401-02).  Intel, however, did not challenge Dr. Landers's RADS diagnosis as irrelevant in its MIL.  *See* Doc. 266 at 3.  Intel may object at trial.

1  she cannot testify to specific causation – that the exposure in fact caused those symptoms.

2  That finding, if made in this case, must be based on Plaintiff's non-expert evidence.

3  **X.      Intel's MIL Regarding New and Worsening Symptoms (Doc. 233).**

4          The Court denied summary judgment on the issue of causation because a jury

5  reasonably could find, without the benefit of expert medical testimony, that Alsadi was

6  exposed to $H_2S$ and the exposure caused a toxic inhalation injury on the night in question

7  and immediately thereafter.  Doc. 204 at 30-33.  After receiving supplemental briefing, the

8  Court granted summary judgment on the issue of whether Alsadi's exposure to $H_2S$ caused

9  RADS and denied summary judgment on the extent and duration of Plaintiffs' injuries.

10  Doc. 216 at 9 ("[A]lthough Plaintiff now lacks evidence to show that he suffers from

11  RADs, he is not precluded under Arizona law from presenting evidence that he suffered an

12  inhalation injury on the night in question, that has persisted.") (citations omitted).

13          Intel now moves to exclude evidence and argument of new and worsening

14  symptoms.  Doc. 233.  Intel claims that Plaintiffs intend to present evidence that Alsadi's

15  initial symptoms "somehow 'triggered' the development of new and different symptoms,

16  such as wheezing, coughing fits, 'electric shock' type chest pain, shortness of breath,

17  vomiting, and incontinence."  *Id.* at 3.  Intel contends that proving such new and different

18  symptoms requires admissible expert testimony that Plaintiffs cannot offer, and that such

19  evidence is also necessary to show that "Alsadi's immediate symptoms grew substantially

20  worse over the months and years following the alleged exposure."  *Id.* at 3-4.

21          As previously explained, the Court intends "to permit Plaintiffs to present evidence,

22  if offered in admissible form, that Alsadi's symptoms which developed immediately upon

23  exposure (and which the jury therefore could properly conclude were caused by the

24  exposure) have continued and likely will continue into the future, but not to permit them

25  to present evidence of new or different symptoms that were not immediately apparent upon

26  exposure."  Doc. 216 at 7.  The Court maintains its view that this is the correct approach

27  given Plaintiffs' lack of expert causation evidence, but the Court must "engage in this line-

28  drawing as the evidence is presented at trial."  *Id.*  The Court's task will be to determine

from the evidence whether Alsadi's claimed injuries are new and different symptoms or a continuation of the symptoms he experienced at the time of exposure.  The parties will be permitted to present evidence and arguments on this issue, and the Court will make its findings based on what the evidence proves, not on speculation.  Intel's motion (Doc. 233) will be denied.[10]

## XI.   Intel's MIL Regarding Michael Torbert's Trial Testimony (Doc. 234).

Torbert worked for JLL at Intel's Chandler campus when the off-gassing incident occurred.  Intel asserts that Torbert offers three categories of inadmissible testimony in his deposition – expert opinions, hearsay, and "additional objectionable testimony."  Doc. 234 at 2.   Intel provides various examples of the purported inadmissible testimony, but "has not attempted to list every instance of inadmissible testimony in [Torbert's] deposition." *Id.*

Intel's motion "sweeps too broadly and is an improper attempt to pre-try the case." *Smilovits v. First Solar, Inc.*, No. CV12-0555-PHX-DGC, 2019 WL 6698199, at *4 (D. Ariz. Dec. 9, 2019); *see PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 875200, at *14 (D. Ariz. Mar. 2, 2015) ("motions in limine are not an opportunity to pre-try the case"); *Universal Engraving Inc. v. Metal Magic Inc.*, No. CV 08-1944 PHX RJB, 2011 WL 13070114, at *1 (D. Ariz. July 12, 2011) (same).  Intel may object at trial to testimony it believes is expert opinion, hearsay, or inadmissible under Rule 403.  The Court will be far better equipped to rule on specific testimony at that time.

The Court will deny Intel's motion regarding Torbert's trial testimony.  Doc. 234.

## XII.   Intel's MIL Regarding Testimony of Gases Other than $H_2S$ (Doc. 235).

Intel moves to preclude Dr. Thomas Abia, an Intel chemical engineer, and three of Plaintiffs' experts, from testifying about sulfur dioxide or gases other than $H_2S$.  Doc. 235.

---

[10] Intel asserts in a footnote that Plaintiffs did not timely disclose Dr. Gerald Schwartzberg to offer expert opinions as required by Rule 26(b)(2).  Doc. 233 at 3, n.3. Plaintiffs address this argument in their response to Intel's motion in limine regarding expert testimony of certain medical professionals (Docs. 237, 267).

### A.   Dr. Johnson-Arbor.

The rebuttal expert disclosure deadline in this case was January 11, 2019.  Doc. 142 at 1.  On March 29, 2019 – more than two months after the deadline – Plaintiffs filed a new declaration from Dr. Johnson-Arbor in which she opines, among other things, that Alsadi inhaled sulfur dioxide ("$SO_2$") and possibly other hazardous gases and the exposure caused various symptoms and RADS.  Doc. 159-2.  Intel moved to strike the declaration as untimely and because Johnson-Arbor's new $SO_2$ opinions are inadmissible speculation.  Doc. 167.  The Court denied the motion as moot given its ruling that Dr. Johnson-Arbor is not qualified to render a causation opinion in this case and her causation opinions are not reliable.  Doc. 204 at 19 & n.13.

Intel contends that if Dr. Johnson-Arbor's belated $SO_2$ exposure opinion survived the Court's exclusion of her causation opinions and $H_2S$ exposure opinion (*see* Doc. 204 at 16-19), her $SO_2$ opinion should be precluded for reasons stated in Intel's motion to strike and *Daubert* motion (*see* Docs. 147, 167).  Doc. 235 at 2-3.  In response to this argument, Plaintiffs do not explain their failure to comply with the January 11, 2019 rebuttal expert disclosure deadline.  Doc. 142 at 1.  The Court cannot conclude that Plaintiffs' failure was "substantially justified or harmless," Fed. R. Civ. P. 37(c)(1), and will grant Intel's motion to exclude Dr. Johnson-Arbor's $SO_2$ exposure opinion set forth in her March 29, 2019 declaration (Doc. 159-2).  *See Nunes*, 2020 WL 1324808, at *1; *Food Servs. of Am., Inc. v. Carrington*, No. CV-12-00175-PHX-GMS, 2013 WL 4507593, at *17 (D. Ariz. Aug. 23, 2013) (striking untimely expert disclosures).

### B.   Greg Gerganoff.

Intel asserts that Gerganoff's expert reports and declarations "are littered with unsupported speculation that $SO_2$ and other unknown 'hazardous gases' might have been released during the incident at issue."  Doc. 235 at 3 (citing Docs. 164-4 at 3-5, 181 ¶¶ 12, 22).  Intel argues that because Gerganoff provides opinions from a safety standpoint, and not from a scientific perspective, he should be precluded from speculating that $SO_2$ and other toxic gases may have been released.  *Id.* (citing Doc. 204 at 20-21).

Plaintiffs assert that they do not seek to introduce evidence of a specific amount of $SO_2$ or any other gas in the ambient air on the night in question, but only the likelihood that $SO_2$ was present based on the known fact that $SO_2$ is a by-product of the IWS System and Intel's own testimony.  Doc. 261 at 2.  But Plaintiffs do not explain why expert testimony is necessary for this purported "known fact."  Nor have Plaintiffs shown that Gerganoff is qualified to offer a scientific opinion that there was a significant release of $SO_2$ from the overdosing of the chemical Thio-Red.  *See, e.g.*, Doc. 181 ¶ 22.

Plaintiffs note that Gerganoff formed his opinion about the potential for $SO_2$ exposure from data provided by Intel and the testimony of Dr. Abia and Jennifer Francis, an Intel industrial hygienist.  Doc. 261 at 2.  Gerganoff may rely on that testimony and Intel's data in offering standard of care opinions, but he may not opine from a scientific perspective that $SO_2$ and toxic gasses other than $H_2S$ may have been released.  The Court will grant Intel's motion in this regard.

**C.    Derrick Denis.**

Intel moves to preclude Derrick Denis, an indoor environmental quality expert, from opining that $SO_2$ may have been present because $H_2S$ can be involved in certain chemical reactions that produce $SO_2$.  Doc. 235 at 4.  But Intel provides only four pages of Denis' 25-page declaration in support of its motion.  The Court cannot conclude on the present record that Denis is not qualified to offer the challenged opinion.  The Court will rule at trial on any objection to Denis' testimony.  Intel's motion will be denied in this regard.

**D.    Dr. Abia.**

Dr. Abia is an Intel chemical engineer and the "system owner" of Intel's IWS.  *See* Doc. 261 at 3.  Intel moves to preclude Dr. Abia from testifying that $SO_2$ likely was released because Plaintiffs "completely mischaracterize Dr. Abia's testimony."  Doc. 235 at 4.  But Intel presents no argument or legal authority for excluding "mischaracterized" testimony. *See id.*; Doc. 190 at 10.

Intel contends that any such testimony from Dr. Abia would constitute expert opinion that was not properly disclosed.  Doc. 235 at 4-5.  But Dr. Abia is a fact witness

whom Intel designated as its Rule 30(b)(6) deponent on "what other hazardous gases, fumes or substances could have potentially been released on the date of the subject incident as a result of the IWS processes." *Id.* (quoting Doc. 261-6 at 3).  "Courts routinely permit witnesses to offer lay opinion testimony concerning matters they learn or experience they gain as a result of their employment."  *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 946-47 (C.D. Cal. 2014) (citing cases).  The Court will not preclude Dr. Abia from testifying as a fact witness about the possible release of $SO_2$.  If Plaintiffs seek to elicit inappropriate expert opinions from Dr. Abia, Intel may object.  *See Wilson v. Maricopa Cty.*, No. CV-04-2873-PHX-DGC, 2007 WL 686726, at *16 (D. Ariz. Mar. 2, 2007) (allowing the defendants' consultant on the issue of inmate safety in Tent City to testify as a fact witness at trial, but noting that defendants could object to any inadmissible expert opinions).  Intel's motion will be denied with respect to Dr. Abia's testimony as a fact witness.

**XIII.  Intel's MIL Regarding Certain OSHA Regulations (Doc. 236).**

The Ninth Circuit has recognized that "safety standards such as those contained in OSHA assist 'a jury's determination of negligence because they represent the community's judgment as to what conduct is reasonable and what conduct is not.'"  *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir. 1991) (citations omitted).  Consistent with this authority, the Arizona Court of Appeals has held that "an OSHA standard may be considered as some evidence of the standard of care even when OSHA requirements are not binding on the defendant, so long as there is sufficient foundation (1) establishing that the standard at issue is directly related to the exercise of reasonable care and (2) a reasonable nexus exists between the proffered standard and the circumstances of the injury."  *Wendland v. AdobeAir, Inc.*, 21 P.3d 390, 396 (Ariz. Ct. App. 2009).

Intel contends that certain OSHA-based opinions Gerganoff sets forth in his report (Doc. 164-4) are inadmissible under *Wendland* because the OSHA rules do not set a standard of care and otherwise are irrelevant.  Doc. 236 at 3-4.  As the Court previously explained, Gerganoff is not required to accept Intel's interpretation of OSHA standards.

Doc. 204 at 21.  The Court cannot conclude on the present record that Gerganoff's OSHA-based opinions are inadmissible.  Intel will be free to cross-examine Gerganoff at trial and to object on the basis of foundation, relevancy, Rule 403, or other grounds.  The Court will rule on objections as they are made.  *See id.*  Intel's motion regarding certain OSHA regulations will be denied.

## XIV.   Intel's MIL Regarding Certain Medical Professionals (Doc. 237).

### A.   Drs. Vu, Spangenberg, Shobe, and Kamarinos.

Plaintiffs disclosed various treating physicians who may testify about their evaluations and treatment of Alsadi's injuries, the extent of those injuries, and treatment costs.  Docs. 237-2, 267-1, 267-2.  Intel moves to preclude Drs. Le Vu, Bethanie Spangenberg, Darren Shobe, and Syros Kamarinos from offering expert opinions of any kind, including on causation, diagnosis, and prognosis, because they were not properly identified as expert witnesses under Rule 26(a)(2).  Doc. 237 at 2-3.  Plaintiffs vow that the doctors will not testify to causation, but assert that as properly disclosed percipient fact witnesses, they "may testify to and opine on what they saw and did[.]"  Doc. 267 at 2 (quoting *Goodman*, 644 F.3d at 819).

As explained above, however, treating physicians are not exempt from the requirements of Rule 702 simply because they formed their opinions in the course of treatment, and therefore are not exempt from the disclosure requirements of Rule 26(a)(2)(C).  As other courts have recognized, treating physicians "are often considered 'hybrid experts' because they can provide both fact testimony (as percipient witnesses to the services rendered to the patient) and expert testimony (based on their specialized knowledge)."  *Scolaro v. Vons Cos., Inc.*, No. 2:17-cv-01979-JAD-VCF, 2019 WL 7284738, at *3 (D. Nev. Dec. 27, 2019) (citing *Goodman*, 644 F.3d at 819; Fed. R. Civ. P. 26, advisory committee's note to 2010 amendment).  If Plaintiffs intended to call treating physicians to opine about the treatment of Alsadi, they were required by Rule 26(a)(2)(C) to disclose "the subject matter on which the witness is expected to present evidence under Rule 702" and "a summary of the facts and opinions to which the witness is expected to

testify." *Alsadi*, 2019 WL 4849482, at *3; *see Transoceanic Cable Ship Co. LLC v. Bautista*, No. CV 17-00209 ACK-KSC, 2018 WL 3521174, at *2 (D. Haw. July 20, 2018) ("Treating physicians testifying as to opinions formed during the course of treatment are 'experts' regarding whose testimony the Rule 26(a)(2)(C) disclosures are required.") (citing *Republic of Ecuador v. Mackay*, 742 F.3d 860, 865 n.1 (9th Cir. 2014)).   The Rule 26(a)(2)(C) "summary, although clearly not as detailed as a Rule 26(a)(2)(B) report, must be sufficiently detailed to provide fair notice of what the expert will say at trial." *Leland v. Cty. of Yavapai*, No. CV-17-8159-PCT-SPL (DMF), 2019 WL 1547016, at *6 (D. Ariz. Mar. 18, 2019); *see Flonnes v. Prop. & Cas. Ins. Co.*, No. 2:12-cv-01065-APG, 2013 WL 2285224, at *5 (D. Nev. May 22, 2013) ("[I]dentification of the subject matter on which the witness is expected to testify is insufficient to comply with the summary of facts and opinions requirement of Rule 26(a)(2)(C).").

Plaintiffs' disclosures identify the subjects on which the treating physicians may opine under Rule 702 – the treatment of Alsadi's injuries, the extent of those injuries, and the cost of treatment – but come "nowhere close to providing a summary of the facts and opinions of any single physician[,] as required by Rule 26(a)(2)(C)." *Frederick v. Frederick*, No. CV-17-00368-PHX-JJT, 2018 WL 3738199, at *1 (D. Ariz. Aug. 7, 2018); *see Meza v. Wacker Neuson Sales Ams. LLC*, No. 2:18-CV-0574-HRH, 2019 WL 2417396, at *5 (D. Ariz. June 10, 2019) ("While plaintiffs' disclosure as to Dr. Foltz arguably identifies the subject matter on which he will testify, it does not contain a summary of Dr. Foltz's facts and opinions. Plaintiffs have not complied with Rule 26(a)(2)(C)."); *Garrett v. Woodle*, No. CV-17-08085-PCT-BSB, 2018 WL 6110924, at *4 (D. Ariz. Nov. 21, 2018) (plaintiff's disclosures failed to comply with Rule 26(a)(2)(C) where they indicated that "the healthcare providers will have opinions in certain areas, including [p]laintiff's injuries and the causation of those injuries, but do not state what the opinions are, and do not identify the factual basis for those opinions"); *Deguzman v. United States*, No. 2:12-CV-0338 KJM AC, 2013 WL 3149323, at *4 (E.D. Cal. June 19, 2013) ("Plaintiff's disclosure of Dr. Anderson was accompanied by a statement that fails to meet

even the most liberal interpretation of Rule 26(a)(2)(C).  That Dr. Anderson intended to testify to 'the nature and extent of plaintiff's injuries, cause of those injuries, diagnosis, prognosis, reasonableness of medical expenses and necessity of treatment' is obvious and hardly promotes the goal of increasing efficiency and reducing unfair surprise.");  *Pineda v. Cty. of S.F.*, 280 F.R.D. 517, 523 (N.D. Cal. 2012) (merely stating that the treating physician "will present fact and opinion testimony on causation, diagnosis, prognosis, and extent of injury" based on medical records was an inadequate disclosure under Rule 26(a)(2)(C)).

A party that fails to disclose information required by Rule 26(a) is not allowed to use that information at a trial unless the failure was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).  Plaintiffs do not contend that their failure to comply with the disclosure requirements of Rule 26(a)(2)(C) was substantially justified or harmless.  The Court will grant Intel's motion to preclude Drs. Vu, Spangenberg, Shobe, and Kamarinos from offering expert opinions at trial.[11]

### B.   Drs. Leff and Schwartzberg.

Plaintiffs disclosed Drs. Ben Leff and Gerald Schwartzberg as persons who may have knowledge regarding their findings and independent medical examinations of Alsadi in his worker's compensation matter.  Docs. 237-2 at 4, 267-2 at 4.  Intel moves to preclude the doctors from offering expert opinions because Plaintiffs failed to comply with the Rule 26 expert disclosure requirements.  Docs. 233 at 3 n.3, 237 at 4.

Plaintiffs do not contend that they disclosed Drs. Leff and Schwartzberg as expert witnesses under Rule 26(a)(2).  *See* Doc. 161-1.  Instead, Plaintiffs state that they have "no interest in any opinions these doctors formed outside of their examinations of Alsadi," and

---

[11] The doctors may testify as percipient fact witnesses because Plaintiffs properly disclosed them under Rule 26(a)(1)(A)(i).  *See* Doc. 267-2; *Transoceanic Cable Ship*, 2018 WL 3521174, at *6 ("Dr. Joaquin may testify at trial in the limited capacity of a fact witness, but . . . he may not give any testimony that draws on his medical expertise.  Said another way, Dr. Joaquin may testify regarding what he perceived and did during his visits with Bautista, the timing and frequency of such visits, and other matters to which he is competent to testify by way of personal – but not specialized – knowledge.").

that the doctors' "opinions and reports are [to be] treated as would be those of a treating doctor and percipient witnesses."  Doc. 267 at 2.  Again, however, if Plaintiffs intend to call the physicians to offer opinions under Rule 702 about their evaluation or treatment of Alsadi, they must make Rule 26(a)(2)(C) disclosures.  Plaintiffs did not provide the information required by this rule in their disclosures about Drs. Leff and Schwartzberg.

Plaintiffs contend that the Court should allow Dr. Leff to testify consistent with his reports because their failure to properly disclose him as an expert witness was substantially justified and harmless.  Doc. 267 at 3-4 (citing Fed. R. Civ. P. 37(c)(1)).  The Court does not agree.

Dr. Leff  examined Alsadi and prepared a report of his findings on January 18, 2017.  Doc. 161-12.[12]  But Plaintiffs did not disclose him as a potential witness until May 2018, and have never disclosed him as an expert witness.  *See* Docs. 237 at 4, 267 at 3.  The fact that the Court has excluded certain opinions of Plaintiffs' designated experts does justify the failure to properly disclose Dr. Leff as an expert witness.  *See* Doc. 267 at 4 n.3; *Mettias v. United States*, No. CIV. 12-00527 ACK-KS, 2015 WL 998706, at *5 (D. Haw. Mar. 6, 2015) (failure to disclose medical providers as experts was not substantially justified where their identities were known to the government when the action was commenced and it had more than a year to provide expert disclosures); *see also Bauer Bros., LLC v. Nike, Inc.*, No. 09-CV-0500-WQH BGS, 2011 WL 12828588, at *3-4 (S.D. Cal. Oct. 19, 2011) (finding that the plaintiff's failure to provide an expert report more than two months after the court clarified the role of "hybrid experts" in light of *Goodman* was not substantially justified).

Plaintiffs contend that so long as an expert's opinions at trial do not differ substantially from opinions offered in the expert report, they are not late for purposes of Rule 26(a) and therefore are not subject to Rule 37 preclusion.  *Id.* at 4 (citing *Godinez v.*

---

[12] Dr. Leff corrected a mistake he made concerning Alsadi's weight in a subsequent addendum.  *See* Doc. 267 at 4.

*Huerta*, No. 16-CV-0236-BAS-NLS, 2018 WL 2018048, at *8 (S.D. Cal. May 1, 2018)). But Plaintiffs never disclosed Dr. Leff as an expert witness. Plaintiffs' citation to *Godinez* is misplaced because the plaintiff in that case properly disclosed its expert witness and his report under Rule 26(a)(2). 2018 WL 2018048, at *8.

The fact that Intel has been aware of Dr. Leff's examination of Alsadi for workers' compensation purposes does not render harmless Plaintiffs' failure to affirmatively disclose him as an expert witness in this case. The issue is not whether Intel knew of the existence and work of Dr. Leff, but whether they knew Plaintiffs intended to call him as a Rule 702 witness at trial. Only the latter knowledge would enable Intel to prepare to meet his opinions at trial. *See* Doc. 267 at 3; *Pac. Indem. Co. v. Nidec Motor Corp.*, 203 F. Supp. 3d 1092, 1097 (D. Nev. 2016) ("Harmlessness may be established if a disclosure is made sufficiently before the discovery cutoff to enable the movant to depose the expert and challenge his expert report.") (citations omitted). "This is not a case where Plaintiffs have substantially complied with the rule but a minor, technical failing . . . is at issue. Plaintiffs have clearly failed to comply with the basics of the rule, and their attempt to downplay the significance of this failure to comply by speculating as to [Intel's] prejudice (or lack thereof) is unavailing." *Montalvo v. Am. Family Mut. Ins.*, No. CV-12-02297-PHX-JAT, 2014 WL 2986678, at *7 (D. Ariz. July 2, 2014).

Plaintiffs assert that they should be allowed to call Dr. Schwartzberg to offer opinions about his examination of Alsadi because he "was retained and properly disclosed by Intel" and Plaintiffs disclosed "any witnesses listed by [Intel], whether or not withdrawn prior to trial." Doc. 267 at 3. This tactic, if accepted, would defeat the purpose of Rule 26 disclosures, which are meant "to give each side clear notice of who will be giving opinion testimony . . . so that each side can prepare to respond, including taking depositions. A vague cross-reference to the other side's witnesses does not provide that notice." *Castillo v. City & Cty. of S.F.*, No. C 05-00284 WHA, 2006 WL 618589, at *2 (N.D. Cal. Mar. 9, 2006) (holding that the defense disclosure did not adequately put plaintiff on notice that it intended to call a doctor and ask him Rule 702 opinion questions).

The Court will grant Intel's motion to preclude Plaintiffs from calling Drs. Leff and Schwartzberg as expert witnesses.  Docs. 233 at 3 n.3, 237 at 4-5.[13]

## XV.   Intel's MIL Regarding Gerganoff's Opinions and Building CH-8 (Doc. 238).

The Court denied Intel's motion for summary judgment on the duty element of Alsadi's negligence claim because a jury reasonably could find that Intel retained some control over the work that allegedly caused Alsadi's injuries.  Doc. 204 at 26-30.  The Court also denied Intel's motion to exclude Gerganoff's opinions that Intel failed to reasonably safeguard workers from a known hazardous condition.  *Id.* at 19-22.

Intel now claims that the issue of duty at trial should focus not on what could have been done to prevent an $H_2S$ release inside the CH-8 building, but rather the duty of care applicable to Alsadi outside of CH-8 once Intel recognized there was an off-gassing occurrence.  Doc. 238 at 2.  Intel essentially seeks a summary judgment ruling on the scope of its duty in this case.  A "motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim[.]"  *Hana Fin*, 735 F.3d at 1162.

Moreover, Intel's argument that what happened inside CH-8 is irrelevant to Alsadi's negligence claim is not convincing.  *See* Docs. 238 at 2-3, 259 at 1.  Intel does not dispute that it owns the entire Chandler campus, including the CH-8 building and the evacuation area where Alsadi allegedly was injured.  Doc. 196-3 at 6; *see* Doc. 204 at 27.  Scott Graunke, Intel's environmental health and safety manager, testified that Intel controls both the mixture of chemicals used in the IWS and the amount of $H_2S$ in the ambient air.  Doc. 196-3 at 3-4, 14-15.  From this evidence, a jury reasonably could find that Intel retained at least some measure of control over JLL's operation of the IWS and $H_2S$ emissions inside CH-8.  *See* Doc. 204 at 28.

The Court will deny Intel's motion to exclude Gerganoff's opinions regarding what occurred in CH-8 and Intel's IWS operations.  Doc. 238.

/ / /

---

[13] Given this ruling, the Court need not decide whether Dr. Leff's causation opinion is sufficiently reliable.  *See* Doc. 237 at 4.

**XVI.   Intel's MIL Regarding Bakkenson's Opinions (Doc. 239).**

Intel moves to exclude the opinions of Gretchen Bakkenson, Plaintiffs' vocational expert, because some of her opinions are based in part on the now-inadmissible opinions of Drs. Garcia and Landers regarding causation and RADS.  Doc. 239.

Plaintiffs note, correctly, that although they lack evidence to show that Alsadi suffers from RADS, they are not precluded from presenting evidence that Alsadi suffered an immediate inhalation injury that has persisted, or from seeking future damages for his symptoms, provided Plaintiffs can present evidence that the symptoms are likely to continue into the future.  Doc. 264 at 2 (citing Doc. 216 at 6).  Plaintiffs make clear that Bakkenson will offer no opinion regarding the cause of Alsadi's injuries, that she will not vouch for the assumed facts on which her vocational opinions are based, and that her opinions will be based on assumed facts that comport with evidence presented at trial.  *Id.* at 2-3.  Whether such facts have been proved will be for the factfinder to decide at trial, absent a contrary ruling after Plaintiffs have presented their case in chief.  *See* Fed. R. Civ. P. 50(a); *see also Bustamante v. Graco, Inc.*, No. CV03-182 TUC JMR, 2006 WL 5156868, at *2 (D. Ariz. Mar. 9, 2006) (holding that whether the vocational expert's reliance on wage rates was reasonable was "an issue that goes to the weight of the evidence and should be left to the jury to decide" where the expert's opinions were "not wholly unsupported speculation or based only on subjective beliefs").

The Court will deny Intel's motion regarding the expert opinions of Bakkenson.

**XVII. The Parties' Motion to Seal (Doc. 213).**

The parties move to seal exhibits one and three to Plaintiffs' reply in support of their motion for negative inference.  Doc. 213.  Plaintiffs' have lodged the proposed unredacted sealed versions of the exhibits with the Court.  Docs. 214-1, 214-2.

Sealing the exhibits will have no effect on the public's ability to understand the issues in this case because lightly redacted copies will be filed in the public docket.  The Court finds compelling reasons to seal and will grant the parties' motion.  *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

**IT IS ORDERED:**

1.     Plaintiffs' motion for negative inference (Doc. 207) is **denied**.

2.     Plaintiffs' MIL regarding the 11.7 ppm measurement of $H_2S$ (Doc. 241) is **denied**.

3.     Plaintiffs' MIL to preclude evidence or argument challenging causation and the permanence of Alsadi's symptoms (Doc. 208) is **denied**.

4.     Plaintiffs' MIL to exclude evidence of Alsadi's misdemeanor convictions (Doc. 240) is **granted**.

5.     Plaintiffs' MIL to exclude untimely disclosed testimony and documents (Doc. 242) is **granted**.

6.     Plaintiffs' MIL regarding the cause of the off-gassing incident (Doc. 243) is **denied**.

7.     Intel's MIL regarding health effects not at issue (Doc. 231) is **denied in part and granted in part**.  The motion is denied with respect to the purported inflammatory language and potential health effects caused by $H_2S$ exposure, and granted with respect to Gerganoff's causation opinions.

8.     Intel's MIL regarding causation and Alsadi's symptoms (Doc. 232) is **denied**.

9.     Intel's MIL regarding new and worsening symptoms (Doc. 233) is **denied**.

10.     Intel's MIL regarding trial testimony of Michael Torbert (Doc. 234) is **denied**.

11.     Intel's MIL regarding testimony of gases other than $H_2S$ (Doc. 235) is **granted in part and in denied part**.  The motion is granted with respect to Dr. Johnson-Arbor's $SO_2$ exposure opinion and Gerganoff's opinion that there was a release of $SO_2$, and denied with respect to Denis's opinion that $SO_2$ may have been present and Dr. Abia's testimony as a fact witness.

12.     Intel's MIL regarding certain OSHA regulations (Doc. 236) is **denied**.

13.     Intel's MIL regarding expert testimony from certain medical professionals (Doc. 237) is **granted**.   Drs. Vu, Spangenberg, Shobe, and Kamarinos are precluded from offering expert opinions at trial, and Plaintiffs may not call Drs. Leff and Schwartzberg as expert witnesses.

14.     Intel's MIL regarding Gerganoff's opinions and the CH-8 building (Doc. 238) is **denied**.

15.     Intel's MIL regarding Bakkenson's opinions (Doc. 239) is **denied**.

16.     The parties' motion to file exhibits one and three to Plaintiffs' reply brief under seal (Doc. 213) is **granted**.   The Clerk is directed to file the lodged exhibits (Docs. 214-1, 214-2) under seal.   The parties shall file redacted public versions of the exhibits on the docket by **July 24, 2020**.

17.     The Court will schedule the bench trial in this case, and set a final pretrial conference, once it is clear that the trial can be held without jeopardizing the health of all participants.

Dated this 17th day of July, 2020.

David G. Campbell
Senior United States District Judge